**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| CAMBRIDGE RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIS TOWERS WATSON plc, TOWERS WATSON & CO., WILLIS GROUP HOLDING plc, VALUEACT CAPITAL MANAGEMENT, JOHN J. HALEY, DOMINIC CASSERLEY, and JEFFREY W. UBBEN,<br><br>Defendants. | Civ. A. No. __1:17-cv-01338__<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff Cambridge Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Towers Watson & Co. ("Towers") and Willis Group Holding plc ("Willis") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by Towers and Willis; (c) analyst reports concerning Towers and Willis; and (d) other public information regarding Towers and Willis.

**NATURE OF THE ACTION**

1. This class action is brought on behalf of all Towers shareholders of record as of October 2, 2015, the record date for Towers shareholders to be eligible to vote on the merger between Towers and Willis. The claims asserted herein are alleged against Willis Towers Watson plc ("Willis Towers Watson"), Towers, Willis, Towers' former Chairman and Chief Executive

Officer ("CEO") John Haley, Willis' former CEO Dominic Casserley, ValueAct Capital Management ("ValueAct"), and ValueAct's CEO Jeffrey Ubben (collectively, "Defendants"), for their violations of Sections 14(a) and/or 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder.

2. This action arises from the merger between Towers and Willis (the "Merger"), which closed on January 4, 2016. Months earlier, on June 30, 2015, Towers and Willis announced that they had entered into an agreement to merge, pursuant to which Towers stockholders would receive 2.649 shares of Willis stock and a $4.87 per share cash dividend in exchange for each Towers share. Under the agreement, Towers shareholders would own 49.9% of the combined entity, with Willis shareholders owning the remaining majority.

3. The merger required the approval of a majority of Towers shareholders and it became immediately apparent that many Towers shareholders were dissatisfied with the consideration they would receive in the deal. Recognizing the waning shareholder support for the originally agreed upon merger, the Towers Board of Directors authorized Towers Chairman and CEO Haley to renegotiate the deal terms, including both the exchange ratio and the cash dividend.

4. Haley, however, had an economic incentive for the deal to be consummated and when he recognized that Towers shareholders would likely reject the deal, Haley conspired with Willis executives and a major Willis shareholder, ValueAct, to secretly help them execute this transaction. In particular, Haley decided to sell out Towers shareholders in exchange for an undisclosed promise of a three-year, $165 million pay package when Haley became CEO of the merged company. In return, Haley did not negotiate to maximize the value of Towers shares in

the merger and instead worked to persuade Towers' Board and Towers shareholders that a meager $5 increase in the special dividend was the most he could extract from Willis.

5.  As a result of Haley's disloyalty and self-dealing, many of the representations made to investors in the Towers and Willis joint proxy materials were false and misleading. Specifically, the joint proxy materials described the merger renegotiations as an arm's-length negotiation between Haley and Casserley, and entirely omits Ubben and ValueAct's role in those negotiations. The proxy materials also omitted the fact that Haley negotiated his compensation as the future CEO of the combined entity, and that several statements made by Haley in support of the merger were secretly "ghostwritten" by ValueAct.

6.  As a result of these material misrepresentations and omissions, Towers shareholders were misled into accepting consideration from the Merger that was well below fair value for their Towers shares.

7.  Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Exchange Act by filing false and misleading proxy materials.

## JURISDICTION AND VENUE

8.  The claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.  Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Prior to the Merger, Towers maintained its executive offices in this District and the merged entity, Willis Towers Watson, continues to maintain offices in this District. In addition, many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were

issued from this District. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communicatons, and the facilities of the national securities markets.

## PARTIES

10. Plaintiff Cambridge Retirement System represents approximately 5,900 active and retired public employees from Cambridge, Massachusetts, and manages more than $1.2 billion in assets to provide for them in retirement. As set forth in the attached certification, Plaintiff owned shares of Towers stock eligible to vote on the merger and suffered damages as a result of the violations of the federal securities laws alleged herein.

11. Defendant Willis Towers Watson was established by the merger of Towers and Willis. As successor to Towers and Willis, Willis Towers Watson is liable for the violations of the Exchange Act perpetrated by its predecessor entities.

12. Defendant Towers was a professional services firm with its headquarters in Arlington, Virginia.

13. Defendant Willis was a global advisory, brokering and solutions company with its headquarters in London, United Kingdom.

14. Defendant ValueAct is an investment company based in San Francisco and was the largest shareholder of Willis.

15. Defendant John J. Haley ("Haley") served as Chairman and CEO of Towers since 2010 and is currently the CEO of the merged entity, Willis Towers Watson.

16. Defendant Dominic Casserley ("Casserley") served as CEO of Willis from 2013 until his resignation in 2016.

17. Defendant Jeffrey W. Ubben ("Ubben") has served, and continues to serve, as the CEO of ValueAct since 2000.

## SUBSTANTIVE ALLEGATIONS

### Background of the Merger

18. Prior to the Merger, Towers was a leading global consulting company that helped organizations improve performance through risk management, human resources, actuarial and investment services. Willis, which was based in London, was a multinational risk advisor, insurance brokerage, and reinsurance brokerage company.

19. In January 2015, Towers CEO Haley and Willis CEO Casserley began discussing a possible business combination. Those discussions culminated in the June 30, 2015 announcement that Towers and Willis had entered into an agreement to merge. Pursuant to the merger agreement, Towers stockholders would receive 2.649 shares of Willis stock and a $4.87 per share cash dividend in exchange for each Towers share. Under these terms, Towers shareholders would end up owning 49.9% of the combined entity, with Willis shareholders owning 50.1%.

20. The deal required the approval of a majority of Towers shareholders, and it was immediately apparent that many Towers shareholders disfavored the terms of the proposed deal. Upon announcement of the merger, the price of Towers shares dropped 9 percent. Recognizing that the originally agreed upon merger did not have shareholder support, the Towers Board of Directors authorized Haley to renegotiate the deal terms, including both the exchange ratio and the cash dividend.

### Haley Conspires With Willis And ValueAct

21. While he was purportedly renegotiating the terms of the merger with Willis, Haley met with ValueAct CEO Ubben and negotiated his own executive compensation package for

serving as the future CEO of the combined company. ValueAct was Willis' largest investor and had a seat on the Willis Board of Directors, and would continue to have a seat on the Board of the combined company. In exchange, Haley agreed not to pursue a better exchange ratio for Towers shareholders, and instead worked to convince those shareholders to accept a modest $5 per share increase to the cash dividend.

22. Not only was Haley's future compensation concealed from investors, the involvement of Ubben and ValueAct in the negotiations was kept secret. Rather than disclose this important information, Towers instead represented to investors that Haley negotiated the deal terms only with Willis' CEO, Casserley, and Willis' Chairman, James McCann. The SEC filings and proxy solicitation materials do not mention ValueAct in any capacity other than to indicate that ValueAct signed a voting agreement supporting the merger. ValueAct and Ubben's undisclosed involvement went so far as ghostwriting statements attributed to Haley and misleading investors into believing they were Haley's own independent thoughts on the merger.

### Defendants' Materially False And Misleading Statements

23. On October 13, 2015, Towers and Willis filed a definitive proxy, including the merger agreement, with the SEC on Form DEFM14A and as a prospectus supplement to the Registration Statement on Form S-4, and mailed it to shareholders (the "Proxy").

24. The Proxy stated that in considering potential conflicts of interest of Towers' executive officers, "[t]he members of the Towers [] board of directors were aware of the different or additional interests . . . and considered these interests, among other matters, in evaluating and negotiating the [merger], and in recommending to the stockholders of Towers [] that the [merger] be approved." The Proxy went on to list several interests, which are unique to Towers' executive officers.

25.     The statements set forth in ¶24 were materially false and misleading because among the "different or additional interests" not listed in the Proxy is the fact that Haley had negotiated a three-year, $165 million compensation package for himself as the CEO of the merged company in exchange for seeking the minimum consideration necessary to have a reasonable expectation of shareholder approval.  The statement that the "Towers [] board of directors were aware of the different or additional interests" was also materially false and misleading because one Towers Board member, Haley, had concealed his conflicts from the rest of the Board.  Moreover, once the merger terms were revised, Defendants were under a duty to update the Proxy to correct any of the false and misleading statements or omissions they had previously made, and to update any statements or omissions that had become false or misleading as a result of intervening events.

26.     After they announced the revised merger terms, on November 27, 2015, Towers and Willis filed an update to the proxy statement/prospectus with the SEC on Form 8-K and as a prospectus supplement to the joint proxy statement (the "Proxy Update").  The Proxy Update, which is incorporated by reference into the Proxy, set forth a detailed account of Haley's purported negotiations with Willis and paints a picture of an arm's-length negotiation in which Haley actively sought more favorable terms for Towers shareholders.  Specifically, the Proxy Update claimed that Haley negotiated directly with the CEO of Willis, Dominic Casserley, and "proposed that the parties amend the terms of the transaction to . . . change the exchange ratio to increase Towers [] stockholders' ownership of the combined company."

27.     The statements set forth in ¶26 were materially false and misleading because Haley never pursued renegotiation of the exchange ratio and did not try to maximize the value of the dividend paid to Towers shareholders.  In addition, rather than discussing the deal terms with Casserley, Haley was negotiating both the deal terms and his own compensation with the CEO of

ValueAct, Ubben.  These statements were also false and misleading to the extent the Proxy Update did not correct or update the Proxy to reflect Haley's conflict of interest.

28.     The Proxy Update also stated that the Towers Board (on which Haley served as Chairman) "unanimously confirmed" that the revised deal "was advisable and in the best interests of Towers [] and its stockholders."

29.     The statements set forth in ¶28 were materially false and misleading because Haley never pursued renegotiation of the exchange ratio and did not try to maximize the value of the dividend paid to Towers shareholders.  In addition, rather than discussing the deal terms with Casserley, Haley was negotiating both the deal terms and his own compensation with the CEO of ValueAct, Ubben.  The representation that the Board "unanimously" confirmed the revised merger because it was "in the best interests of Towers [] and its stockholders" is also false and misleading because Haley—who was Chairman of the Towers Board—did not seek to maximize the merger consideration and knew that other Towers Board members were not aware of his collusion with Willis and ValueAct.

30.     In addition, the Proxy Update stated that when Willis and Casserley raised the offer to increase the cash dividend, "Mr. Casserley further stated that any increase in the exchange ratio would not be acceptable."  The Proxy Update further stated that Haley conveyed this message to the Towers Board, informing them of "Willis' position that an increase in the exchange ratio would not be acceptable to Willis."

31.     The statements set forth in ¶30 were materially false and misleading because Haley never pursued renegotiation of the exchange ratio and did not try to maximize the value of the dividend paid to Towers shareholders.  In addition, rather than discussing the deal terms with

Casserley, Haley was negotiating both the deal terms and his own compensation with the CEO of ValueAct, Ubben.

32. The Proxy Update also represented that Haley negotiated the deal terms solely with Willis' CEO, Casserley, and Willis' Chairman, James McCann. The Proxy and Proxy Update did not mention ValueAct in any capacity other than to indicate that "Towers Watson and ValueAct . . . entered into a Voting Agreement pursuant to which, among other things, ValueAct agreed to support the transactions contemplated by the Merger Agreement."

33. The statements set forth in ¶32 were materially false and misleading because they misrepresent ValueAct's extraordinary and undisclosed involvement in the merger negotiations, and omit the fact that rather than discussing the deal terms with Casserley, Haley was negotiating both the deal terms and his own compensation with the CEO of ValueAct, Ubben. The Proxy and the Proxy Update also omit ValueAct and Ubben's undisclosed involvement ghostwriting statements attributed to Haley and misleading investors into believing they were Haley's own independent thoughts on the merger.

34. The above-referenced omitted information, if disclosed, would have significantly altered the total mix of information available to Towers stockholders.

## LOSS CAUSATION

35. The false and misleading Proxy and Proxy Update were an essential link in the chain of events leading to the Merger, and in proximately causing damages to Class members. Defendants' misrepresentations regarding Haley's self-dealing and ValueAct's extraordinary role in the merger negotiations caused Plaintiff and members of the Class to accept merger consideration that failed to adequately value Towers' shares. As a result of their holdings of

9

Towers shares at the record date, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action individually and as a class action on behalf of all holders of Towers common stock who were harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

37. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

38. The Class is so numerous that joinder of all members is impracticable. As of the close of business on the Towers record date—October 2, 2015—69,440,607 shares of Towers common stock were outstanding and entitled to vote on the merger. Those shares were held by hundreds, if not thousands, of individuals and entities located throughout the country.

39. Questions of law and fact are common to the Class, including, among others, (i) whether Defendants violated the Exchange Act; and (ii) whether Defendants' conduct irreparably harmed plaintiff and the other members of the Class.

40. There is a well-defined community of interests in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether Defendants violated the Exchange Act;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d) Whether Defendants disregarded that their statements and/or omissions were false and misleading;

    (e) Whether Defendants' conduct caused the members of the Class to sustain damages; and

    (f) The extent of damage sustained by Class members and the appropriate measure of damages.

  41. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

  42. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

  43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

  44. Towers' and Willis' "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

  45. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Towers or Willis who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made,

nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against Willis Towers Watson, Towers, Willis, Haley, and Casserley (the "14(a) Defendants")**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The 14(a) Defendants disseminated the false and misleading Proxy and Proxy Update, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.

48. The Proxy and Proxy Update were prepared, reviewed, and/or disseminated by the 14(a) Defendants. By virtue of their positions within Towers and Willis, the 14(a) Defendants were aware of this information and their duty to disclose this information in the Proxy and Proxy Update.

49. The 14(a) Defendants were at least negligent in filing the Proxy and Proxy Update with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy and Proxy Update are material in that a reasonable stockholder will consider them important in deciding how to vote on the merger. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and Proxy Update and in other information reasonably available to stockholders.

51. The Proxy and Proxy Update are an essential link in causing Towers stockholders to approve the merger.

52. By reason of the foregoing, the 14(a) Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy and Proxy Update, Plaintiff and the Class were harmed.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against Haley, ValueAct, and Ubben (the "20(a) Defendants")

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. Haley acted as a controlling person of Towers, and ValueAct and Ubben acted as controlling persons of Haley, within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions and participation in and/or awareness of Towers' and Willis' operations and/or intimate knowledge of the false statements contained in the Proxy and the Proxy Update, the 20(a) Defendants had the power to control and did influence and control, directly or indirectly, the decision making of Towers and Haley, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

56. The 20(a) Defendants were provided with or had unlimited access to copies of the Proxy and Proxy Update alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. As set forth above, the 20(a) Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the 20(a) Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of 20(a) Defendants' conduct, Plaintiff and the Class were harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 21, 2017

Respectfully submitted,

*/s/ Susan R. Podolsky*
Susan R. Podolsky (Va. Bar No. 27891)
**LAW OFFICES OF SUSAN R. PODOLSKY**
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone: (571) 366-1702
Facsimile: (703) 647-6009
spodolsky@podolskylaw.com

*Local Counsel for Plaintiff Cambridge Retirement System*

Gerald H. Silk (*pro hac vice* forthcoming)
Avi Josefson (*pro hac vice* forthcoming)
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com

*Counsel for Plaintiff Cambridge Retirement System*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Ellen K. Philbin, on behalf of Cambridge Retirement System ("Cambridge"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Executive Director of Cambridge. I have reviewed the complaint and authorize its filing by counsel.

2. Cambridge did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Cambridge is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Cambridge held 700 shares of Towers Watson & Co. common stock as of October 2, 2015.

5. Cambridge has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification.

   *Luna v. Marvell Technology Group, Ltd.*, No. 15-cv-7214 (S.D.N.Y.)
   *French v. CBL & Associates Properties, Inc.*, No. 16-cv-165 (E.D. Tenn.)

6. Cambridge will not accept any payment for serving as a representative party on behalf of the Class beyond Cambridge's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of November, 2017.

_____
Ellen K. Philbin
Executive Director
Cambridge Retirement Systems