**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE WILLIS TOWERS WATSON PLC PROXY LITIGATION | Civ. A. No. 1:17-cv-01338-AJT-JFA |
| | <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
<u>TW/WILLIS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**HUNTON ANDREWS KURTH LLP**
951 East Byrd Street
Richmond, Virginia 23219-4074
Tel: (804) 788-8201
Fax: (804) 788-8218

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for the TW/Willis Defendants*

Dated: May 14, 2018

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 3

I.    PLAINTIFF FAILS TO ADEQUATELY PLEAD A FALSE OR MISLEADING
      STATEMENT OR OMISSION............................................................................ 3

      A.    The Omission Of The Alleged September "Agreement" Did Not
            Render The Proxy Materials Misleading ................................................. 4

      B.    Omitting That Mr. Haley Allegedly Negotiated For The "Minimum"
            Additional Consideration Needed Did Not Render The Proxy
            Materials Misleading .......................................................................... 8

      C.    The Omission Of VA's Alleged Involvement Did Not Render Any
            Statement Misleading.......................................................................... 10

II.   PLAINTIFF FAILS TO ADEQUATELY PLEAD THAT ANY OF THE
      ALLEGED "OMISSIONS" WERE MATERIAL ........................................... 10

      A.    Mr. Haley's Discussions With Mr. Ubben And VA Are Immaterial As
            A Matter Of Law................................................................................. 11

      B.    Facts Concerning The Price Renegotiation Were Fully And Fairly
            Disclosed............................................................................................ 14

      C.    The Omission Of Mr. Ubben's And VA's "Involvement" In Merger-
            Related Negotiations Is Immaterial As A Matter Of Law ..................... 14

III.  THE COMPLAINT FAILS TO PLEAD FACTS DEMONSTRATING A
      STRONG INFERENCE OF SCIENTER ........................................................ 15

IV.   PLAINTIFF'S CLAIMS ARE TIME-BARRED............................................ 17

      A.    Any Reasonably Diligent Plaintiff Would Have Discovered The Facts
            Underlying The Alleged Violations As Soon As The Proxy Was Filed
            In 2015 ............................................................................................... 17

      B.    Established Principles Of Agency Law Impute Plaintiff's Counsel's
            Knowledge Of The Alleged Actionable Conduct To Its Clients ............ 18

V.    PLAINTIFF FAILS TO PLEAD A CLAIM UNDER SECTION 20(a) .......... 19

CONCLUSION.................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*In re AIG Advisor Grp.*,
   2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007),
   *aff'd on other grounds*, 309 F. App'x 495 (2d Cir. 2009) ......................................................16

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
   367 F.3d 212 (4th Cir. 2004) .....................................................................................................6

*Burt v. Maasberg*,
   2013 WL 1314160 (D. Md. Mar. 31, 2013).................................................................................4

*In re Cogent, Inc. S'holder Litig.*,
   7 A.3d 487 (Del. Ch. 2010).......................................................................................................14

*Cozzarelli v. Inspire Pharm. Inc.*,
   549 F.3d 618 (4th Cir. 2008) .....................................................................................................4

*Csabai v. Martek Biosciences Corp.*,
   2009 WL 5206477 (D. Md. Dec. 23, 2009)..............................................................................17

*Globis P'rs, L.P. v. Plumtree Software, Inc.*,
   2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ..........................................................................15

*GO Computer, Inc. v. Microsoft Corp.*,
   508 F.3d 170 (4th Cir. 2007)), *aff'd*, 385 F. App'x 298 (4th Cir. 2010) ................................17

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) .........................................................................................2, 10, 13

*Himmel v. Bucyrus Int'l, Inc.*,
   2014 WL 1406279 (E.D. Wis. Apr. 11, 2014).........................................................................15

*Hysong v. Encore Energy Partners LP*,
   2011 WL 5509100 (D. Del. Nov. 10, 2011) ..........................................................................6, 7

*Katyle v. Penn Nat'l Gaming Inc.*,
   637 F.3d 462 (4th Cir. 2011) .................................................................................................1, 6

*LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*,
   318 F.3d 148 (2d Cir. 2003).....................................................................................................17

*In re Lear Corp. Shareholder Litigation*,
   926 A.2d 94 (Del. Ch. 2007).....................................................................................................13

*LMP Hldgs., LLC v. PLY Enters., LLC*,
    2012 WL 4344302 (E.D. Va. Sept. 21, 2012)........................................................................1, 6

*La. Mun. Police Emps. Ret. Sys. v. Cooper Indus. plc*,
    2012 WL 4958561 (N.D. Ohio Oct. 16, 2012) ..................................................................2, 6

*Malon v. Franklin Fin. Corp.*,
    2014 WL 6791611 (E.D. Va. Dec. 2, 2014) ....................................................................14, 15

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010)...........................................................................................7

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) .........................................................................................19

*Monroe v. City of Charlottesville*,
    579 F.3d 380 (4th Cir. 2009) .........................................................................................6

*Okla. Firefighters Pension & Ret. Sys. v. K12, Inc.*,
    66 F. Supp. 3d 711 (E.D. Va. 2014) ................................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)...........................................................................................7, 8, 10

*Phillips v. Triad Guar. Inc.*,
    2015 WL 1457980 (M.D.N.C. Mar. 30, 2015)................................................................6, 12

*Quinn v. Knight*,
    2016 WL 6471462 (E.D. Va. Nov. 1, 2016).........................................................................13

*Smith v. Circuit City Stores*,
    286 F. Supp. 2d 705 (E.D. Va. 2003) .............................................................................12

*Stieberger v. Sullivan*,
    738 F. Supp. 716 (S.D.N.Y. 1990)..................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................15

**Statutes, Regulations and Rules**

15 U.S.C. § 78u-4(b)(1) ................................................................................................4

17 C.F.R. § 240.14a-9 ...................................................................................................6

Fed. R. Civ. P. 8(a) ..................................................................................................3, 4

## PRELIMINARY STATEMENT

The TW/Willis Defendants[1] established in their Opening Brief that Plaintiff's claims are directly contradicted by an extensive, indisputable record (cited in or otherwise incorporated into the Complaint) evidencing that Mr. Haley's WTW compensation was not negotiated until *after* the stockholder vote on the Merger in December 2015 and not agreed upon until *after* the Merger closed in January 2016.   Unable to refute that showing, Plaintiff simply trumpets its unsubstantiated claim that Mr. Haley and Mr. Ubben reached a supposed "secret agreement" regarding Mr. Haley's WTW compensation in September 2015, and then argues that the parties' conflicting positions create a factual dispute that precludes dismissal.  Plaintiff is wrong.

Indeed, although Plaintiff contends that the Court must accept its conclusory and unsupported allegations as true, the Court "owe[s] no allegiance to 'unwarranted inferences, unreasonable conclusions, or arguments' drawn from" factual allegations.  *Katyle v. Penn Nat. Gamin Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citation omitted).  Instead, when documents incorporated into a complaint demonstrate that the plaintiff's conclusory allegations have no basis in fact, "those allegations need not be afforded the presumption of truth normally granted to factual allegation[s] contained within the complaint." *LMP Hldgs., LLC v. PLY Enters., LLC*, 2012 WL 4344302, at *2 (E.D. Va. Sept. 21, 2012) (citation omitted).  That is precisely the case here, and the Court should reject Plaintiff's attempt to salvage this case by relying on a concocted factual dispute that flies in the face of a record that Plaintiff itself relies upon in the Complaint.  *See infra*, Point I.

Plaintiff's other responses to the Motion similarly fall short:

---

[1] Capitalized terms that are used but not defined herein have the meanings ascribed to them in the TW/Willis Defendants' opening brief (the "Opening Brief" or "Br.") in support of their motion to dismiss (the "Motion").  Plaintiff's opposition to the Motion is referred to herein as the "Opposition" or "Opp."

*First*, Plaintiff misstates the applicable law.  Omissions, even if material, are not *per se* actionable under Section 14(a).  Opp. at 8-9, 13-14.  Rather, Plaintiff "must identify a precise 'statement' . . . that is either affirmatively misleading or that is rendered misleading by the operation of" the alleged omissions.  *La. Mun. Police Emps. Ret. Sys. v. Cooper Indus. plc*, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012).  Here, the alleged omissions -- the alleged "secret agreement," Mr. Haley seeking "only the minimum additional consideration necessary to have a reasonable chance of [stockholder] approval" of the Merger, and Mr. Ubben's and VA's involvement in the Merger negotiations -- did *not* render a single statement in the Proxy Materials false or misleading.  *See infra*, Point I.

*Second*, Plaintiff fails to overcome the TW/Willis Defendants' showing that the alleged omissions are immaterial as a matter of law.  Plaintiff, again, attempts to dismiss the TW/Willis Defendants' arguments as fact-based and inappropriate for adjudication on a motion to dismiss.  Opp. at 9.  However, it is well-settled that materiality "may be resolved by a court as a matter of law."  *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir. 2004).  And, here, the alleged material omissions are simply requests for more detail.  It is undisputed that TW's stockholders were aware that Mr. Haley would be the CEO of the post-Merger company and that the new company would have a market capitalization twice that of TW.  Accordingly, there can be no debate that a reasonable investor would have understood that Mr. Haley's compensation might increase, and additional disclosure regarding the supposed "secret agreement," assuming it even existed, would have added nothing.  The same is true with respect to the other alleged omissions -- they would not have been material to a reasonable investor.  *See infra*, Point II.

*Third*, the fact that the Complaint disclaims fraud and purports to plead negligence (*see* Opp. at 27) does not preclude the Court from finding, as it should, that Plaintiff's allegations

"sound in fraud" and, thus, are subject to the obligation to plead scienter.   Among others, Plaintiff's allegations that Mr. Haley participated in a scheme to push the Merger through and failed to disclose his "secret agreement," sound in fraud.  The Complaint, however, fails to plead scienter and, in fact, expressly disclaims "*any* allegations of . . . scienter."  Compl. at 2 (emphasis added).  *See infra*, Point III.

*Finally*, Plaintiff's claims are time-barred.  Try as Plaintiff might to suggest otherwise, there is no meaningful distinction between the allegations in the Complaint and what was known to a reasonably diligent plaintiff more than a year before the original complaint in this action was filed.   In addition, BLBG's knowledge from the Appraisal Action is imputed to its client (Plaintiff), and Plaintiff's attempt to circumvent well-established principles of agency law -- namely, by (i) rebutting the strawman argument that an attorney's knowledge is not imputed to a putative class and (ii) arguing that there was a supposed "ethical wall" within BLBG between the attorneys who prosecuted the Appraisal Action and those prosecuting this action (*see* Opp. at 28-30) -- all fail, including because *the same BLBG attorney has appeared in both matters*.  *See infra*, Point IV.

## ARGUMENT

## I.  PLAINTIFF FAILS TO ADEQUATELY PLEAD A FALSE OR MISLEADING STATEMENT OR OMISSION

The TW/Willis Defendants established in the Opening Brief that the omissions alleged in the Complaint are entirely conclusory, contradicted by documents properly considered by the Court on the Motion and, thus, are not pled with the requisite particularity.[2]  Plaintiff offers no

---

[2] Plaintiff argues that its claims "are subject to liberal Rule 8(a) notice pleading standards," Opp. at 9, but elsewhere concedes that the PSLRA "applies generally to Exchange Act claims."  *Id.* at 10.  The "'[e]xacting pleading requirements' of the PSLRA" require Plaintiff to "specify each statement alleged to have been misleading, the reasons or reasons why the statement is misleading, and, if," as here, "an allegation regarding the statement or omission is made on

response other than to point to its conclusory allegations of a supposed "secret agreement" and to argue that such allegations create a fact issue that precludes dismissal. *See* Opp. at 2, 3, 9, 11-13, 19, 21-22. The TW/Willis Defendants further established in the Opening Brief that none of the alleged omissions rendered a single statement in the Proxy Materials false or misleading. *See* Br. at 12-19. Plaintiff responds by arguing, first, that an omission need only be material to be actionable, and, second, that the omissions, in any event, "rendered numerous statements in the Proxy misleading." *Id.* at 13-14. Plaintiff is wrong in all respects.

### A. The Omission Of The Alleged September "Agreement" Did Not Render The Proxy Materials Misleading

The TW/Willis Defendants have demonstrated that Plaintiff's principal allegation -- that Mr. Haley reached a "secret agreement" with Mr. Ubben in September 2015 regarding Mr. Haley's compensation as CEO of post-Merger WTW -- is contradicted by the Complaint and publicly-available information. *See* Br. at 7-8, 10-11. In particular, the TW/Willis Defendants highlighted the following contradictory facts (among others), all of which are properly before the Court on the Motion and none of which are addressed, much less rebutted, by Plaintiff in its Opposition:

- Mr. Ubben and VA had no authority to negotiate on behalf of the post-Merger board of directors, which did not yet exist. The Complaint does not allege (nor could it) that Mr. Ubben or VA had the ability or authority to negotiate on behalf of the post-Merger company. *See id.* at 14.

- The purpose of the September meeting was to discuss VA's compensation philosophy. Following the September 2015 meeting, Mr. Ubben emailed Mr. Haley stating that he "hope[d the meeting] was informative regarding *how we work with our companies*." Ex. C (emphasis added) (cited at Compl. ¶ 84).

---

information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 623 & n.1 (4th Cir. 2008); *see also* 15 U.S.C. § 78u-4(b)(1). Indeed, the law is clear that "[b]y using the words 'all facts,' the PSLRA departs from the pleading standard of Fed. R. Civ. P. 8(a)." *Burt v. Maasberg*, 2013 WL 1314160, at *12 (D. Md. Mar. 31, 2013).

- The negotiation of Mr. Haley's post-Merger compensation was not conducted until *after* the Proxy Materials were disseminated and *after* stockholder approval had been obtained. In December 2015, the chair of WTW's Compensation Committee first asked Mr. Ubben to "catch up on the conversations between yu [sic] and JH regarding *comp and your thoughts.*"  Compl. ¶ 86 (emphasis added).

- A new, four-person WTW Compensation Committee was established post-Merger, and it retained expert consultants for advice regarding the negotiation and structuring of Mr. Haley's compensation.  Semler was retained in January 2016 to assist with drafting, structuring, and negotiating Mr. Haley's compensation package.  *See* Ex. L at 51.

- It was not until March 1, 2016 that Mr. Haley's compensation and employment agreement were finalized and the agreement signed.  WTW's Form 8-K announcing the agreement was filed with the SEC *more than three months after* the stockholder vote and *nearly six months after* the September meeting during which the alleged "secret agreement" was reached.  *See* Ex. N.

- Plaintiff acknowledges in the Complaint that Mr. Haley's actual WTW compensation differs from the terms discussed at the September meeting.  In contrast to the preliminary structure discussed in September 2015, which lacked significant detail and focused solely on the amount of equity compensation Mr. Haley potentially could receive, Mr. Haley's actual employment agreement provides for a base salary, cash incentives, and a two-tiered, performance-based equity component.  And even with respect to the equity component, the terms of the equity award, the performance metrics used to calculate the eventual payout under that award, and the amount of the award all differed from the structure discussed at the September meeting.  *Compare* Ex. B *with* Ex. L; *see also* Compl. ¶¶ 83, 153.

In sum, Plaintiff's conclusory allegations regarding the "secret agreement" have not been pled with the requisite particularity because the Complaint and the properly considered record on the Motion establish that there simply was no such agreement.

Unable to refute the extensive record properly before the Court clearly establishing that no agreement was (or could have been) reached between Messrs. Haley and Ubben, Plaintiff argues that, "[a]t best, Defendants' contention that there was no agreement in September 2015 is a fact issue that cannot be decided in their favor now." Opp. at 13.  In other words, Plaintiff, remarkably, argues that the Motion should be denied because it alleges -- from whole cloth -- the existence of a "secret agreement," which allegation it contends must be accepted as true. However, while the Court must accept as true all *well-pled* factual allegations in the Complaint,

the Court "owe[s] no allegiance to 'unwarranted inferences, unreasonable conclusions, or arguments' drawn from" factual allegations.  *Katyle*, 637 F.3d at 466 (quoting *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009)).  And "[w]here," as here, "factual allegations in the complaint are contradicted by [documents properly considered], those allegations need not be afforded the presumption of truth normally granted to factual allegation[s] contained within the complaint."  *LMP*, 2012 WL 4344302, at *2 (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).  Simply put, because *actual* facts properly before the Court contradict Plaintiff's *conclusory* allegations, those allegations must be discarded.

Moreover, even if Messrs. Haley and Ubben had reached a "secret agreement" in September 2015, Plaintiff's Section 14(a) claim would still fail because the supposed agreement's omission did not render any statement in the Proxy Materials false or misleading. Plaintiff contends that the "omission of a material fact is itself actionable" under Section 14(a), Opp. at 14, but that misstates the law.  By its terms, Rule 14a-9 requires a plaintiff to plead particularized facts demonstrating that the omitted information was necessary to make other disclosures in a proxy "not false or misleading."  17 C.F.R. § 240.14a-9.  Thus, courts have held that:

> To the extent plaintiffs contend it is enough for a plaintiff simply to allege that material information was omitted from a proxy statement in order to state a claim under § 14(a), plaintiffs are incorrect.  Rather, . . . in order to sufficiently allege the elements of an omission claim under § 14(a) and Rule 14af [sic], the plaintiff must identify a precise "statement" in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact.

*Cooper Indus.*, 2012 WL 4958561, at *8; *see also Phillips v. Triad Guar. Inc.*, 2015 WL 1457980, at *8 (M.D.N.C. Mar. 30, 2015) ("A plaintiff must allege 'a factual statement or omission -- that is, one that is demonstrable as being true or false.'  '[T]he statement must be

false, or the omission must render public statements misleading.'") (citation omitted); *Hysong v. Encore Energy Partners LP*, 2011 WL 5509100, at *5 (D. Del. Nov. 10, 2011) ("Rule 14a-9's 'materially misleading omission' . . . requirement is comprised of two discrete elements:  (1) the omission must be '*material*', and (2) the omission must render some statement included in the proxy solicitation '*false or misleading*.'").

Here, Plaintiff does not identify any statements in the Proxy Materials rendered false or misleading by the alleged omissions, even accepting them as true.  For example, unlike in the cases upon which Plaintiff relies, the Proxy Materials do not contain an *affirmative representation* that "no discussions concerning employment or compensation occurred."  *See, e.g.*, Opp. at 22 (citing *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1179 (Del. Ch. 2010) (proxy affirmatively, but incorrectly, stated that no negotiations regarding CEO's post-merger employment had occurred)).  Instead, Plaintiff, in its Opposition, points to the following statements as supposedly having been rendered misleading by the omission of the supposed "secret agreement":  (i) that the TW Board was "aware of" and "considered" potential conflicts of interest in evaluating and recommending the Merger, including "the continued employment of certain executive officers of Willis and Towers Watson by the combined company" (Opp. at 14; Compl. ¶¶ 168-70, 173, 175, 178); (ii) that "upon completion of the merger, 'John J. Haley will become Chief Executive Officer of the combined company'" (Opp. at 14-15; Compl. ¶¶ 179-80); and (iii) that the Merger was the result of a "thorough, independent board process" and an "extensive evaluation and negotiation by an engaged, independent board" (Opp. at 15; Compl. ¶¶ 186, 189, 192, 205-06).  These statements, on their face, have *nothing* to do with whether Mr. Haley discussed his post-Merger compensation with Mr. Ubben in September 2015 and, thus, they are not rendered false or misleading by the omission of the

supposed "secret agreement."

In addition, several of the challenged statements are statements of opinion subject to a heightened pleading burden under *Omnicare*. *See* Br. at 15-16. While Plaintiff attempts to cabin statements of opinion to just those that begin with the words "believe" or "think," Opp. at 17, the law takes a much broader (and more practical) view. That a sales process was "thorough," a board was "engaged," and a price was "fair," are classic statements of corporate optimism and opinion on which reasonable minds could differ. *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. K12, Inc.*, 66 F. Supp. 3d 711, 715-22 (E.D. Va. 2014) (holding that statements using adjectives such as "strong," "sophisticated," "serious[]," and "on track" are opinions and non-actionable puffery). A board's opinion is not "false" simply because a stockholder disagrees with it. To adequately challenge a statement of opinion, a plaintiff must allege facts showing either that the speaker did not actually believe the opinion or that the speaker omitted some key fact demonstrating that the speaker lacked any basis for the opinion. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1326-32 (2015). Plaintiff has not alleged *any* facts calling into doubt the TW Board's basis for its opinions and, thus, challenges to those opinions fail as a matter of law.

### B. Omitting That Mr. Haley Allegedly Negotiated For The "Minimum" Additional Consideration Needed Did Not Render The Proxy Materials Misleading

The TW/Willis Defendants also established in their Opening Brief that Plaintiff's allegation that the Proxy Materials failed to disclose that Mr. Haley "negotiated for the minimum additional consideration for shareholders" (Compl. ¶¶ 196, 198, 206, 210, 212, 214) rests on a mischaracterization of Mr. Haley's deposition testimony in the Appraisal Action. *See* Br. at 17. In response, Plaintiff doubles-down on the mischaracterization, omitting half of the question Mr. Haley was asked and again erroneously claiming that Mr. Haley testified that he "determined to

8

obtain only 'the minimum [additional consideration] that we need to have a reasonable expectation of shareholder approval.'" Opp. at 17 (quoting Compl. ¶ 124); *see also id.* at 18-19, 26. However, the full question-and-answer was as follows:

> Q.    And so, it is fair to say, is it not, that as of November 10th, *what you are communicating to Willis is*:   Look, we're not going to argue for a better [stock] split based on our post-announcement performance; what we are giving you is the minimum that we need to have a reasonable expectation of shareholder approval.
>
> A.    So, yes.

Compl. ¶ 124 (emphasis added).  That testimony does not establish, as a matter of fact, that Mr. Haley "negotiated for the minimum additional consideration"; it establishes that he told Willis, as a matter of negotiation strategy, that a minimum of $10.00 per share was necessary. Moreover, what Mr. Haley told Willis was expressly disclosed in the Proxy Supplement.  Ex. I, Proxy Supplement, at 4-5 (disclosing that Mr. Haley told Willis "he believed . . . at least $10.00 per share would be necessary").[3]

In short, neither Mr. Haley's deposition testimony nor his "notes" suggest that he was intentionally depressing the value TW's stockholders would receive.  To the contrary, the Proxy

---

[3] Plaintiff also repeatedly points to "notes" purportedly made by Mr. Haley at a TW Board meeting on November 17, 2015 that state:  "I told Ubben we needed $10 dividend.  Didn't trouble him."  Opp. at 6, 17-19, 21; Compl. ¶¶ 13-14, 125.  From that statement, Plaintiff asks the Court to infer that Mr. Haley was in Mr. Ubben's and VA's pocket and did not attempt to negotiate hard for TW's stockholders.  Putting aside that the "notes" say no such thing, Plaintiff ignores that the referenced conversation between Messrs. Haley and Ubben occurred on November 14, 2015 -- *four days after* Mr. Haley (following discussions with the other TW directors) proposed to Willis that it increase the dividend to $10.00/share.  *See* Ex. X, Reply Declaration of Johnathon E. Schronce in Support of the TW/Willis Defendants' Motion to Dismiss the Amended Complaint, Motion *in Limine*, at 4 n.2 ("Q:  But of course on November 14 you'd already indicated to Mr. Ubben that you would need $5 to $7 increase in special dividend, right?  A:  Sure." (quoting Mr. Haley's deposition testimony)); *see also* Ex. I, Proxy Supplement, at 3-4 (disclosing that, following discussion with certain TW directors, Mr. Haley proposed the increased dividend to Mr. Casserley and Willis's Chairman on November 10, 2015).  It is thus hardly surprising that Mr. Ubben was not stunned or "trouble[d]" by Mr. Haley's ask.

Supplement details Mr. Haley's repeated attempts to negotiate a more favorable deal for TW's stockholders, even when he was contractually obligated to seek approval of the Merger on the terms originally agreed upon. *See* Br. at 17.

In any event, Plaintiff once more fails to explain how this alleged omission rendered the Proxy Materials false or misleading. Again unable to identify a disclosure directly contradicted by the alleged omission (because there is none), Plaintiff points to statements of opinion that the TW Board believed the Merger was "fair," "compelling," and "favorable" to TW's stockholders. Yet, Plaintiff does not allege that the TW Board believed the Merger was anything other than "fair," "compelling," and "favorable," as required to allege falsity under *Omnicare*. *See* Br. at 17-18.

**C.     The Omission Of VA's Alleged Involvement Did Not Render Any Statement Misleading**

As set forth in the Opening Brief, Plaintiff's argument that the Proxy Materials "entirely omitted [VA's] lead role" in the negotiation of the Merger ignores extensive disclosures in the Proxy Materials regarding Mr. Ubben and VA. *See* Br. at 25. Moreover, Plaintiff's suggestion that Mr. Haley negotiated the amended Merger terms with Mr. Ubben, rather than with Willis, ignores the back-and-forth negotiations between TW and Willis that are chronicled in the Proxy Supplement and unrefuted by Plaintiff. *See id.* at 19.

**II.     PLAINTIFF FAILS TO ADEQUATELY PLEAD THAT ANY OF THE ALLEGED "OMISSIONS" WERE MATERIAL**

The TW/Willis Defendants further established in the Opening Brief that Plaintiff's Section 14(a) claim fails for the independent reason that all of the alleged omissions are immaterial as a matter of law. *See* Br. at 19-25. In an attempt to evade dismissal, Plaintiff falls back on the oft-rejected argument that "[b]ecause materiality involves mixed questions of law and fact, issues of materiality should not be decided at the pleading stage." Opp. at 9. "No

shortage of cases, however, make clear that materiality may be resolved by a court as a matter of law." *Greenhouse*, 392 F.3d at 657.

A.    **Mr. Haley's Discussions With Mr. Ubben And VA Are Immaterial As A Matter Of Law**

As demonstrated in the Opening Brief, no reasonable investor would have found the supposed "secret agreement" material because the total mix of information available to TW stockholders included disclosure of Mr. Haley's potential conflict.  First, the Proxy Materials disclosed that Mr. Haley would be CEO of the post-Merger entity and that TW's directors and officers "may have interests in the Merger that are different from" TW's stockholders, including "*the continued employment of certain executive officers of . . . [TW] by the combined company*." Br. at 20 (citing Ex. A, Proxy, at 74, 82, 113, 135, and quoting *id.* at 36-37 (emphasis added)). Second, multiple public sources cited by Plaintiff -- including public statements and reports by Driehaus, ISS, and Glass Lewis -- observed that Mr. Haley would likely be paid substantially more as CEO of the combined entity.  *See* Br. at 21.  Against this backdrop, additional disclosure regarding Mr. Haley's conflict surely would have been immaterial.  *See id.* at 22 (citation omitted).

In response, Plaintiff devotes a single sentence to the disclosures in the Proxy Materials regarding Mr. Haley's potential conflict, arguing that "knowing that Haley had a '*potential*' conflict as the future CEO is a far cry from knowing that he had, in fact, an *actual* and severe conflict of interest."  Opp. at 23.  Plaintiff then spends the next two pages of its Opposition arguing that the "information from third-party sources outside the proxy" are not relevant because the TW/Willis Defendants' supposed "truth-on-the-market" defense fails.  *Id.* at 23-24.

As an initial matter, the TW/Willis Defendants have not asserted a "truth-on-the-market" defense.  Under the truth-on-the-market doctrine, which generally applies to Section 10(b)

claims, credible corrective information can render a previous misrepresentation immaterial as a matter of law.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988).   The question here, however, is what information is considered part of the "total mix" from which the Court must make its materiality determination.   As to that question, courts in the Fourth Circuit have consistently held that public information is considered part of the "total mix."  *Phillips v. Triad Guar. Inc.*, No. 2015 WL 1457980, at *8 (M.D.N.C. Mar. 30, 2015) ("With respect to an omission, '[t]he securities laws require disclosure of information that is not otherwise in the public domain. . . .'") (quoting *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212 (4th Cir. 1994)); *see also Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 705, 721 (E.D. Va. 2003) ("Disclosure of information already publicly available does not materially alter the 'total mix' of available information.").

Moreover, Plaintiff's argument that TW stockholders were not aware of the ISS and Glass Lewis reports is directly contradicted by Plaintiff's allegations that TW stockholders were influenced by these reports in deciding whether to vote in favor of the Merger.  *See* Compl. ¶¶ 89, 123; Opp. at 23.   Accordingly, the disclosures from ISS and Glass Lewis, at a minimum, should be viewed as part of the "total mix" of information available.

Even if the "total mix" is limited to the Proxy Materials' "four corners," as Plaintiff contends, those materials sufficiently disclosed that Mr. Haley's incentives were a "risk" for stockholders to consider.  As noted above and ignored by Plaintiff, the Proxy Materials disclosed that Mr. Haley would be CEO of the combined entity and that, therefore, he "may have interests in the Merger that are different from" TW's stockholders.  Br. at 15 (quoting Compl. ¶ 169). Any reasonable stockholder knew -- and ISS, Driehaus, Glass Lewis, and a prospective stockholder class representative were all saying in real time based on the disclosure in the Proxy

Materials -- that, as CEO of a post-merger company with a market capitalization twice that of TW, Mr. Haley was going to earn much more money. *See*, *e.g.*, Ex. R.[4]

In this context, even if Plaintiff had adequately alleged the existence of a compensation "agreement" (and it has not), disclosure of that "agreement" would not have altered the "total mix" of information. Specifically, had the alleged agreement as supposedly reflected by the slides shown to Mr. Haley in September been disclosed to stockholders, such disclosure would merely have demonstrated that Mr. Haley, as CEO of the $18 billion post-Merger company, would earn (i) less than market for sub-par performance and (ii) above market for substantial outperformance. *See* Ex. B, at 1. Such information would not have been material to TW stockholders, and any argument to the contrary gives stockholders far too little credit. The test is whether a "reasonable" stockholder would find the omission material; the law does not presume that a stockholder "hid[es] her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing." *Greenhouse*, 392 F.3d at 656. The omission of the supposed "secret agreement" was thus immaterial as a matter of law.[5]

---

[4] Plaintiff's assertion that "Defendants adamantly and publicly *denied the existence of Haley's conflict of interest*" (Opp. at 24) is another mischaracterization of the documents upon which Plaintiff itself relies. As shown in the TW/Willis Defendants' Opening Brief, TW did *not* deny that Mr. Haley had a potential conflict in connection with the Merger; indeed, it disclosed that he *did* have a potential conflict. *See* Br. at 8 (citing Ex. E, TW Investor Presentation Update, at 7). TW simply stated that Driehaus's statement regarding Mr. Haley's *historical* compensation was "demonstrably false." *Id.*

[5] The cases upon which Plaintiff relies in support of its contrary assertion that "the undisclosed compensation agreement was material" (Opp. at 10-11) do not change the result. For example, in *In re Lear Corp. Shareholder Litigation*, a proxy was held materially deficient because it failed to disclose that the target's CEO, who negotiated the transaction, had recently approached the board and expressed concern "about having so much of his net worth tied up in Lear." 926 A.2d 94, 112 (Del. Ch. 2007). The court held that the proxy was required to disclose that the CEO "harbored [motivations] that substantially differed from someone who only owned equity in Lear or who only served as an independent director of Lear." *Id.* at 114. And in *Quinn v. Knight*, 2016 WL 6471462 (E.D. Va. Nov. 1, 2016), the proxy similarly failed to disclose "defendants' financial interests in the merger." *Id.* at *3. The key distinction between the

### B.      Facts Concerning The Price Renegotiation Were Fully And Fairly Disclosed

Plaintiff argues that "[t]he fact that Haley sought only the minimum consideration he could achieve was clearly important to shareholders deciding whether to approve the deal." Opp. at 26.  This argument, again, rests on Plaintiff's mischaracterization of Mr. Haley's deposition testimony in the Appraisal Action.  *See supra*, pp. 8-9.  It also ignores that the Proxy Supplement expressly disclosed the very facts allegedly omitted, including that Mr. Haley told Mr. Casserley "that he believed an increase in the pre-merger special dividend to at least $10.00 per share would be necessary," as well as that, after obtaining approval from the TW Board, Mr. Haley proposed an increase in the "special dividend to $10.00 per share."  Ex. I, Proxy Supplement, at 4-5.

### C.      The Omission Of Mr. Ubben's And VA's "Involvement" In Merger-Related Negotiations Is Immaterial As A Matter Of Law

Given the Proxy Materials' substantial disclosure regarding Mr. Ubben's and VA's participation in the sale process, *see* Br. at 24-25, Plaintiff's call for yet more information regarding such participation is a classic "tell me more" disclosure claim consistently held immaterial as a matter of law.  *See* Br. at 24 (citing *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511 (Del. Ch. 2010)).  Plaintiff asserts that "the fact that Haley was negotiating his

---

proxies at issue in these cases and the Proxy Materials is that the Proxy Materials disclosed that Mr. Haley had interests in the Merger that differed from those of TW's public stockholders.  And where, as here, a conflict has been disclosed, additional information about that conflict does not alter the "total mix." *See* Br. at 22-23 (collecting cases).

Furthermore, Plaintiff makes no meaningful attempt to distinguish the cases cited by the TW/Willis Defendants.  Plaintiff merely argues that the Delaware decisions cited by the TW/Willis Defendants -- which are only two of the four cases cited in support of this proposition -- "are inapplicable" because they "did not address federal claims or pleading standards." Opp. at 25 n.9.  Of course, this argument is undercut by Plaintiff's own reliance on Delaware law (*see, e.g., Lear*) and, in any event, is unpersuasive because "[t]he test of materiality under [Delaware] law is the same as that employed by the Supreme Court of the United States under the federal securities laws." Br. at 22 n.8 (citations omitted).

compensation with Ubben and ValueAct was something that the Board would 'have wanted to know,'" Opp. at 22 (quoting Compl. ¶ 88), but the test is whether a reasonable *stockholder* would find something material -- *not* whether a particular director may have "wanted to know" something.  In assessing materiality, "it is important . . . to tease out information critical to an informed decision by a stockholder from that which would simply be nice to know," as "[m]ere relevance is insufficient to trigger a duty to disclose."  *Malon v. Franklin Fin. Corp.*, 2014 WL 6791611, at *6, *10 (E.D. Va. Dec. 2, 2014).

Plaintiff further asserts that the failure to disclose Mr. Haley's November 2015 discussion with Mr. Ubben regarding a potential increase to the Merger dividend (*see supra*, pp. 8-9 & n.3) was a material omission because "Defendants detailed the extensive back-and-forth of the merger negotiations in the Proxy and Proxy Update" and, therefore, "were obligated to disclose the whole truth."  Opp. at 27.  However, "[a] company is not required to 'give its shareholders a 'play-by-play' description of merger negotiations."  Br. at 25 (quoting *Globis P'rs, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *14 (Del. Ch. Nov. 30, 2007)); *see also Himmel v. Bucyrus Int'l, Inc.*, 2014 WL 1406279, at *17 (E.D. Wis. Apr. 11, 2014) (same).  Plaintiff does not (and cannot) explain why or how disclosure of Mr. Ubben's reaction to the proposed renegotiated price would have significantly altered the "total mix."  Moreover, the Proxy Materials expressly disclosed that VA's consent to the Voting Agreement was an important part of the initial and the renegotiated transaction.  Br. at 25 (citing Ex. A, Proxy, at 2, 6, 20, 80, 95, 124).  It therefore was clear to TW stockholders that there would have been discussions with Mr. Ubben and VA leading up to that consent.  No additional "play by play" was necessary.

## III.    THE COMPLAINT FAILS TO PLEAD FACTS DEMONSTRATING A STRONG INFERENCE OF SCIENTER

As the TW/Willis Defendants established in the Opening Brief, Plaintiff's Section 14(a)

claim sounds in fraud and, therefore, Plaintiff was required, but failed, to state with particularity facts giving rise to a strong inference of scienter.  *See* Br. at 26-27.  A complaint gives rise to a strong inference of scienter "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). The Complaint fails to give rise to a strong inference of scienter because the most compelling inference to be drawn from the facts alleged is that the TW/Willis Defendants believed their disclosures -- including the extensive disclosures regarding Mr. Haley's potential conflict -- to be sufficient and not misleading by omission.  *See id.* at 27.

In response, Plaintiff argues that it "has not alleged any fraud claims, has disavowed fraud in the Complaint (Compl. 1), and has expressly pled negligence in connection with [its] Section 14(a) claim."  Opp. at 27; *see also id.* at 10 n.2.  But Plaintiff cannot escape its repeated allegations that Mr. Haley participated in a scheme to push the Merger through, and failed (either intentionally or recklessly) to disclose, among other things, the supposed "secret agreement." *See* Compl. ¶¶ 4-6, 89, 101-02.  Such allegations, on their face, "sound in fraud" and, thus, impose the obligation to plead particularized factual allegations of scienter -- of which, again, there are none.  *See*, *e.g.*, *In re AIG Advisor Grp.*, 2007 WL 1213395, at *13 (E.D.N.Y. Apr. 25, 2007) (allegation that defendants participated in a scheme "wherein [they] received secret payments" sounded in fraud), *aff'd on other grounds*, 309 F. App'x 495 (2d Cir. 2009).  Plaintiff, as a fallback, argues that the Complaint's allegations are in any event sufficient to plead scienter (Opp. at 27-28), but, as explained above (*see supra*, Points I & II), the Complaint's allegations are conclusory and insufficient.  What is more, the Complaint contains an *express disclaimer* of "*any* allegations of . . . scienter" and states that its claims "are *not* based on any knowing or

16

reckless conduct by or on behalf of Defendants."  Compl. at 1-2 (emphasis added).

## IV.   **PLAINTIFF'S CLAIMS ARE TIME-BARRED**

Plaintiff's claims are also time-barred under the one-year statute of limitations applicable to Section 14(a) claims.  *See* Br. at 27-30.  As established in the Opening Brief, the allegations of the Complaint, coupled with documents incorporated therein or otherwise properly considered, demonstrate that a reasonably diligent plaintiff would have known the facts underlying the claims here more than a year prior to the filing of the original complaint on November 21, 2017.  *See* Br. at 27-29.[6]  Plaintiff fails to rebut that showing in its Opposition.

### A.   **Any Reasonably Diligent Plaintiff Would Have Discovered The Facts Underlying The Alleged Violations As Soon As The Proxy Was Filed In 2015**

Plaintiff dismisses the TW/Willis Defendants' argument as "heavily rely[ing] on a single paragraph in an attorney affidavit filed . . . in New York State Court."  Opp. at 29.  This is incorrect.  The Opening Brief cites to *numerous* filings in *multiple* proceedings that, more than one year prior to the filing of the original complaint, put the world on notice of the very claims alleged therein, including:   an affidavit in New York state court; a motion in the Appraisal Action; an affidavit re-filed in the Appraisal Action; and a complaint in a Delaware fiduciary duty action challenging the very same disclosures made in connection with the Merger.  *See* Br. at 27-29.  In particular, and as Plaintiff acknowledges in its Opposition (at 29), the Delaware fiduciary duty action, brought in mid-2015, alleged that Mr. Haley was a "conflicted director" because he was "likely [to] receive a major increase in compensation," but that "the Proxy *fail[ed] to disclose whether Haley ever discussed compensation issues* with the boards of [TW] or Willis."  *Id.* at 28 (citing Ex. R, at 98).

---

[6] *See also LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003) (a statute of limitations defense may be resolved on a motion to dismiss if "the facts needed . . . can be gleaned from the complaint and papers . . . integral to the complaint").

Moreover, Plaintiff is simply wrong that every single supposedly "key fact" relating to a claim has to have been disclosed previously to constitute adequate notice. *See* Opp. at 29. This argument misstates the law, as the statute of limitations "is not tolled until all evidence is discovered, but only until sufficient evidence to place a plaintiff on inquiry notice has been, or should have been, discovered." *Csabai v. Martek Biosciences Corp.*, 2009 WL 5206477, at *2-3 (D. Md. Dec. 23, 2009) (citing *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007)), *aff'd*, 385 F. App'x 298 (4th Cir. 2010). That indisputably occurred here, and Plaintiff's claims are thus untimely.

**B.      Established Principles Of Agency Law Impute Plaintiff's Counsel's Knowledge Of The Alleged Actionable Conduct To Its Clients**

Finally, the TW/Willis Defendants established in the Opening Brief that Plaintiff's claims must be dismissed as time-barred for the independent reason that Plaintiff's counsel, BLBG, knew the facts underlying the original complaint more than one year prior to its filing, and BLBG's knowledge is imputed to its client, Plaintiff. *See* Br. 29-30. Plaintiff's only response is that "the knowledge of class counsel is not imputed to the members of the class for statute of limitations purposes as a matter of law." Opp. at 30 (emphasis omitted). However, Plaintiff misses the point, which is that BLBG's knowledge is imputed to BLBG's *own client* (Plaintiff). *See, e.g., Stieberger v. Sullivan*, 738 F. Supp. 716, 726 (S.D.N.Y. 1990) (barring principal's participation in class action where attorney's prior knowledge was imputed to principal).

Presumably as another fallback argument, Plaintiff's counsel states in an affidavit filed with the Opposition that an "ethical wall exists between the [BLBG] attorneys who prosecuted the Appraisal Action and those prosecuting the above-captioned action" and, therefore, Plaintiff's counsel here has not had "unfettered access to all discovery in the Appraisal Action." Declaration of Salvatore J. Graziano, sworn to May 7, 2018, at ¶ 2. The Court should be

skeptical of that claim, however, given that *the same BLBG attorney who prosecuted the Appraisal Action has also signed filings in this action*, indicating that any "screen" either is non-existent or was an ineffective afterthought. *Compare* Pls.' Mot. For Lead Pl., at 11 (ECF No. 20) (signed by Blair Nicholas), *with* Ex. V, at 10 (signed by Blair Nicholas).

## V.   PLAINTIFF FAILS TO PLEAD A CLAIM UNDER SECTION 20(a)

Plaintiff's Section 20(a) claim must be dismissed where, as here, Plaintiff has failed to adequately plead an underlying violation of the Exchange Act. *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Opening Brief, the Complaint should be dismissed in its entirety, with prejudice and without leave to amend. Plaintiff concedes that leave to amend is inappropriate where it would be futile. *See* Opp. at 30 n.15. Here, despite having access to extensive discovery from the Appraisal Action, Plaintiff has been unable to plead either a material omission, a misstatement of fact, or that any Defendant acted with scienter. Plaintiff's claims are also time-barred. As a result, amendment would be futile and the case should be dismissed with prejudice.

Dated: May 14, 2018
     Alexandria, Virginia

/s/ Johnathon E. Schronce
Edward J. Fuhr (Va. Bar No. 28082)
Eric H. Feiler (Va. Bar No. 44048)
Johnathon E. Schronce (Va. Bar No. 80903)
**HUNTON ANDREWS KURTH LLP**
951 East Byrd Street
Richmond, Virginia 23219-4074
Tel: (804) 788-8201
Fax: (804) 788-8218
efuhr@HuntonAK.com
efeiler@HuntonAK.com
jschronce@HuntonAK.com


John A. Neuwirth (*pro hac vice*)
Joshua S. Amsel (*pro hac vice*)
Amanda K. Pooler (*pro hac vice forthcoming*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
john.neuwirth@weil.com
joshua.amsel@weil.com
amanda.pooler@weil.com

*Counsel for the TW/Willis Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 14th day of May, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Johnathon E. Schronce
Edward J. Fuhr (Va. Bar No. 28082)
Eric H. Feiler (Va. Bar No. 44048)
Johnathon E. Schronce (Va. Bar No. 80903)
**HUNTON ANDREWS KURTH LLP**
951 East Byrd Street
Richmond, Virginia 23219-4074
Tel: (804) 788-8201
Fax: (804) 788-8218
efuhr@huntonAK.com
efeiler@huntonAK.com
jschronce@huntonAK.com

*Co-Counsel for the TW/Willis Defendants*