**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| IN RE WILLIS TOWERS WATSON PLC PROXY LITIGATION | Case No. 1:17cv1338 (AJT/JFA)<br><br>CLASS ACTION |

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**BY JEFFREY W. UBBEN AND VALUEACT CAPITAL MANAGEMENT, L.P.**

**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1134
Fax: (804) 698-2168

1750 Tysons Boulevard, Suite 1800
Tysons, VA  22102
Tel: (703) 712-5005
Fax: (703) 712-5195

-and-

**Allen Matkins Leck Gamble Mallory**
**  & Natsis LLP**
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Tel: (415) 837-1515
Fax: (415) 837-1516

*Counsel for Defendants Jeffrey W. Ubben and*
*ValueAct Capital Management, L.P.*

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .......................................................................................... 1

II.  ARGUMENT ................................................................................................................... 2

    A.  Plaintiff Must Identify Well-Pled Facts Making It Plausible That Mr. Ubben Or VAC Management Controlled The TW/Willis Defendants. ............................................................................................... 2

        1.  Plaintiff Must Plead Factual Allegations Making It Plausible That Mr. Ubben Or VAC Management Was A Control Person.................................................................................................... 3

        2.  Plaintiff Cannot Rely On Mere Influence To Plead Control. .................. 3

        3.  Plaintiff Must Plead The Possession Of Power To Direct A Controlled Person, Even If That Power Is "Indirect" Or "Otherwise."............................................................................................. 5

    B.  Plaintiff Fails To Identify Well-Pled Facts Making It Plausible That VAC Management, The Manager Of A 10% Minority Stockholder Of Willis, Controlled The TW/Willis Defendants. ............................... 6

    C.  Mr. Ubben's Status As An Outside Director Does Not Show Control. ................................................................................................ 9

    D.  Plaintiff Fails To Allege Facts Making It Plausible That VAC Management Or Mr. Ubben Otherwise Possessed The Power To Control The TW/Willis Defendants.................................................. 10

        1.  The Alleged Engagement By VAC Management Or Mr. Ubben With The Merger Process Fails To Show Control. ..................... 10

        2.  A Discussion About Compensation Philosophy Does Not Show Control. ..................................................................................... 13

        3.  A Reference To "Control" In An Internal Email Does Not Make It Plausible That Mr. Ubben Or VAC Management Possessed The Power To Direct The TW/Willis Defendants. ................................................................................................... 14

**Page**

4.      Mr. Ubben's Signature On The October 2015 Registration
        Statement Fails To Show Control. ........................................................ 16

5.      Plaintiff's Factual Allegations, Taken Together, Fail To
        Show Control. ..................................................................................... 17

E.      Plaintiff Cannot Show Mr. Ubben Or VAC Management Was A
        Culpable Participant In The Alleged Section 14(a) Violations. ........................ 18

1.      Plaintiff Must Plead And Prove Culpable Participation. ........................ 18

2.      Plaintiff Admits The Affirmative Defense Of "Good Faith." ................. 19

F.      The Court Should Deny Plaintiff Leave To Amend. .......................................... 20

III.    CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altman v. SEC*,
666 F.3d 1322 (D.C. Cir. 2011) ....................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 2, 19

*Ashe v. PNC Financial Services Group*,
652 Fed. Appx. 155 (4th Cir. 2016) ................................................................ 19

*Barker v. Henderson, Franklin, Starnes & Holt*,
797 F. 2d 490 (7th Cir. 1986) .......................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 2, 3, 9, 19

*Carpenter v. Harris Upham & Co.*,
594 F.2d 388 (4th Cir. 1979) ............................................................ 2, 18, 19, 20

*Cho v. UCBH Holdings, Inc.*,
890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................ 18

*Colliton v. Cravath, Swaine & Moore LLP*,
No. 08 Civ 0400 (NRB),
2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 24, 2008) ................................ 20

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................................................ 3

*Cyan, Inc. v. Beaver County Employees Retirement Fund*,
138 S. Ct. 1061 (2018) ...................................................................................... 4

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
No. 14-cv-9435 (SHS),
2016 U.S. Dist. LEXIS 39179 (S.D.N.Y. Mar. 25, 2016) ........................... 19, 20

*Gruber v. Gilbertson*,
Case No. 16cv9727,
2018 U.S. Dist. LEXIS 45677 (S.D.N.Y. Mar. 20, 2018) ................................. 6

**Page(s)**

*Hefler v. Wells Fargo & Co.*,
Case No. 16-cv-05479-JST,
2018 U.S. Dist. LEXIS 31874 (N.D. Cal. Feb. 27, 2018) ................................................. 9

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
No. 03 MD 1529 (LMM),
2007 U.S. Dist. LEXIS 66911 (S.D.N.Y. Sept. 10, 2007) ............................................... 10

*In re Alstom SA Securities Litigation*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ....................................................................... *passim*

*In re American Apparel, Inc. Shareholder Litigation*,
Case No. CV 10-06352 MMM (RCx),
2013 U.S. Dist. LEXIS 189797 (C.D. Cal. Aug. 8, 2013) ................................................ 9

*In re BearingPoint, Inc. Securities Litigation*,
525 F. Supp. 2d 759 (E.D. Va. 2007) ..................................................................... 18, 19

*In re BioScrip, Inc. Securities Litigation*,
95 F. Supp. 3d 711 (S.D.N.Y 2015) ................................................................. 6, 7, 16

*In re BofI Holding, Inc. Securities Litigation*,
Case No. 3:15-cv-02324-GPC-KSC,
2017 U.S. Dist. LEXIS 79062 (S.D. Cal. May 23, 2017) ............................................... 16

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005) ....................................................................... *passim*

*In re Global Crossing, Ltd. Securities Litigation*,
No. 02 Civ 910(GEL),
2005 U.S. Dist. LEXIS 26942 (S.D.N.Y. Nov. 7, 2005) .................................................. 9

*In re Kosmos Energy Ltd. Securities Litigation*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) ..................................................................... *passim*

*In re Leslie Fay Cos.*,
918 F. Supp. 749 (S.D.N.Y. 1996) ......................................................................... 8, 17

*In re MicroStrategy, Inc. Securities Litigation*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................................................ 3, 5

**Page(s)**

*In re Mutual Funds Investment Litigation,*
    566 F.3d 111 (4th Cir. 2008) ................................................................. 5, 19

*In re National Century Financial Enterprises, Inc., Investment Litigation,*
    553 F. Supp. 2d 902 (S.D. Ohio 2008) ............................................... 7

*In re Philip Services Corp. Securities Litigation,*
    383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................................ 16

*In re Sonus Networks, Inc. Securities Litigation,*
    Civil Action No. 04-10294-DPW,
    2007 U.S. Dist. LEXIS 28272 (D. Mass. May 10, 2006) ................. 18

*In re Tetra Technologies Inc., Securities Litigation,*
    Civil Action No. 4:08-cv-0965,
    2009 U.S. Dist. LEXIS 126825 & 2009 U.S. Dist. LEXIS 126687 (S.D.
    Tex. Aug. 10, 2009) ........................................................................... 14

*In re Virtus Investment Partners, Inc.,*
    195 F. Supp. 3d 528 (S.D.N.Y. 2016)................................................ 17

*In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation,*
    259 F.R.D. 490 (W.D. Wash. 2009) ................................................... 10

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,*
    432 F. Supp. 2d 571 (E.D. Va. 2006) ................................................ 20

*Janus Capital Group, Inc. v. First Derivative Traders,*
    564 U.S. 135 (2010)........................................................................... 19

*Katz v. Odin, Feldman & Pittleman, P.C.,*
    332 F. Supp. 2d 909 (E.D. Va. 2004) ................................................ 16

*Kiken v. Lumber Liquidators Holdings, Inc.,*
    155 F. Supp. 3d 593 (E.D. Va. 2015) ................................................ 5

*Kuhns v. Ledger,*
    202 F. Supp. 3d 433 (S.D.N.Y. 2016)................................................ 7, 9

*Levy v. Gutierrez,*
    Civil No. 14-cv-443-JL,
    2017 U.S. Dist. LEXIS 68016 (D.N.H. May 4, 2017)....................... 18

**Page(s)**

*Longview Equity Fund, L.P. v. iWorld Projects & Systems, Inc.*,
   Case No. 05 Civ. 6745 (RJS),
   2008 U.S. Dist. LEXIS 25850 (S.D.N.Y. Mar. 26, 2008) ........................................... 8, 14

*Maher v. Durango Metals, Inc.*,
   144 F.3d 1302 (10th Cir. 1998) ..................................................................... 3

*Masterson v. Commonwealth Bankshares, Inc.*,
   2 F. Supp. 3d 824 (E.D. Va. 2014) ................................................................ 17

*Matrix Capital Management Fund, LP v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) ........................................................................ 19

*Medina v. Clovis Oncology, Inc.*,
   215 F. Supp. 3d 1094 (D. Colo. 2017)............................................................ 16

*Paracor Financial, Inc. v. GE Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ............................................................... 11, 12, 14

*SEC v. Small Business Capital Corp.*,
   Case No. 5:12-cv-3237 EJD,
   2013 U.S. Dist. LEXIS 116607 (N.D. Cal. Aug. 16, 2013)........................................ 6, 15

*SEC v. Smith*,
   Case No. C2-cv-04-739,
   2005 U.S. Dist. LEXIS 21427 (S.D. Ohio Sept. 27, 2005) ........................................... 15

*Sennott v. Rodman & Renshaw*,
   414 U.S. 926 (1973)...................................................................................... 5

*Silsby v. Icahn*,
   17 F. Supp. 3d 371 (S.D.N.Y. 2014).............................................................. 7, 9

*Stat-Tech Liquidating Trust v. Fenster*,
   981 F. Supp. 1325 (D. Colo. 1997)................................................................. 10

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
   690 F. Supp. 2d 959 (D. Ariz. 2010) .......................................................... 9, 10

*Thomas v. Magnachip Semiconduct Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................................ 7

**Page(s)**

*Trendsetter Investors, LLC v. Hyperdynamics Corp.*,
    Civil Action No. H-06-0746,
    2007 U.S. Dist. LEXIS 3666 (S.D. Tex. Jan. 18, 2007) ...................................................... 5

*Walker v. Cardinal Savings & Loan Association*,
    690 F. Supp. 494 (E.D. Va. 1988) ................................................................................ 19

*Winter v. D.J. & M. Investment & Construction Corp.*,
    185 F. Supp. 943 (S.D. Cal. 1960) ................................................................................ 4

**Statutes**

15 U.S.C. § 77o(a) ......................................................................................................................... 4

15 U.S.C. § 78t(a) ................................................................................................................ *passim*

**Regulations**

13 F.R. 9321 (Dec. 31, 1948) ...................................................................................................... 4

17 C.F.R. § 230.405 ................................................................................................................ 2, 4

17 C.F.R. § 240.12b-2 ...................................................................................................... 2, 3, 5, 8

## I.      PRELIMINARY STATEMENT

Plaintiff's Opposition is more important for what it concedes than what it says.[1]  Plaintiff does not dispute that either VAC Management, as the manager of a 10% minority stockholder of Willis, or Mr. Ubben, as one of the outside directors of Willis, lacked the formal power to control Willis and TW, the parties to an $18 billion merger of equals.  *See* MPA at 16-20.  Plaintiff makes no attempt to identify well-pled facts from the Complaint showing that VAC Management owned enough voting stock to control the result of a stockholder vote by either Willis or TW stockholders.  Plaintiff also concedes that there was no contract providing that VAC Management or Mr. Ubben could direct the TW/Willis Defendants.  Plaintiff further does not identify well-pled facts showing that the directors of Willis were under the dominion of either Mr. Ubben or VAC Management.

Instead of identifying factual allegations making it plausible that VAC Management or Mr. Ubben possessed the power to direct the TW/Willis Defendants or the contents of the Proxy Materials, Plaintiff repeatedly offers the tautology that VAC Management or Mr. Ubben simply could "influence or control" the TW/Willis Defendants.  *See* Opp. at 18, 22 n.10, 23 n.11, 26-28.  But "influence" and "control" are distinct, for influence without the power to direct does not show control.  *See* MPA at 17 (quoting *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 487 n.50 (S.D.N.Y. 2005)).  Plaintiff argues that it can still plead control by showing some "indirect" or "other[]" power by VAC Management or Mr. Ubben.  *See* Opp. at 2, 14.  Plaintiff, however, fails to identify well-pled facts showing the source of that purported power.  The alleged engagement

---

[1]    Unless otherwise stated, all capitalized terms shall have the meaning ascribed to them in the Memorandum of Law in Support of Motion to Dismiss the Amended Complaint by Jeffrey W. Ubben and ValueAct Capital Management, L.P. (ECF No. 55) (the "MPA").  The "Opposition" or "Opp." refers to Regents' Memorandum of Law in Opposition to Defendants Jeffrey W. Ubben's and ValueAct Capital Management, L.P.'s Motion to Dismiss the Amended Complaint (ECF No. 57).  As in the MPA, "TW/Willis Defendants Brief" refers to the Memorandum of Law in Support of the TW/Willis Defendants' Motion to Dismiss the Amended Complaint (ECF No. 52).

of VAC Management or Mr. Ubben in the Merger process thus reflects nothing more than the ability to persuade or advise.  Plaintiff fails to plead control.

Plaintiff's Complaint also should be dismissed for the fatal admission that its "*claims are based on negligence.  They are not based on any knowing or reckless conduct by or on behalf of Defendants*. . . ."  Complaint at 1-2 (emphasis added).  Whether Plaintiff must plead culpable participation (as the MPA shows) or if defendants must prove "good faith" as an affirmative defense (as the Opposition argues), the Complaint should be dismissed.  Section 20(a) "contain[s] a state-of-mind condition that requires a showing of something more than negligence to establish liability."  *Carpenter v. Harris Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979).  Plaintiff cannot hope to recover on its Section 20(a) claim.

## II.   ARGUMENT

### A.   PLAINTIFF MUST IDENTIFY WELL-PLED FACTS MAKING IT PLAUSIBLE THAT MR. UBBEN OR VAC MANAGEMENT CONTROLLED THE TW/WILLIS DEFENDANTS.

Plaintiff cannot rely on mere conclusions and speculation to state a claim for control person liability under Section 20(a) of the Exchange Act.  *See* MPA at 14 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2]  Consistent with *Twombly* and *Iqbal*, Plaintiff must plead facts making it plausible, and not merely possible, that each of Mr. Ubben and VAC Management was a control person of the TW/Willis Defendants.  *See* MPA at 15.  To plead control, Plaintiff's facts must show it is plausible that both Mr. Ubben and VAC Management possessed, directly or indirectly, "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  *See* MPA at 17 (quoting 17 C.F.R. § 230.405); *see also* 17 C.F.R.

---

[2]   Plaintiff agrees the failure to state a claim for a violation under Section 14(a) of the Exchange Act requires the dismissal of a corresponding Section 20(a) claim.  *See* Opp. at 14.

§ 240.12b-2 (same).  In its Opposition, Plaintiff invokes a lesser pleading standard.  Plaintiff also implies that factual allegations showing far less than actual "control" suffice.  Plaintiff is wrong.

1.  **Plaintiff Must Plead Factual Allegations Making It Plausible That Mr. Ubben Or VAC Management Was A Control Person.**

Plaintiff argues that a Section 20(a) claim can be dismissed "only when a plaintiff does not plead *any* facts from which it can reasonably be inferred the defendant was a control person."  Opp. at 4, 13-14 (citing *In re MicroStrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d 620, 661 (E.D. Va. 2000) (emphasis in Opp.)).  Plaintiff's pleading standard—based on outdated law—is wrong.

Plaintiff's proposed pleading standard is rooted in *Maher v. Durango Metals, Inc.*, a 1998 decision from the Tenth Circuit.  *See In re MicroStrategy*, 115 F. Supp. 2d at 661 (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1306 (10th Cir. 1998)).  The Tenth Circuit's decision was in turn based on the Supreme Court's holding in *Conley v. Gibson* that a dismissal should be granted "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Maher*, 144 F.3d at 1304 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also In re MicroStrategy*, 115 F. Supp. 2d at 627 (citing *Conley*).  The Supreme Court, however, famously "scrap[ped] *Conley's* 'no set of facts' language" in *Twombly*.  *Twombly*, 550 U.S. at 577 (Stevens, J., dissenting).  Plaintiff thus incorrectly argues that "any facts" can plead control.  Plaintiff must instead plead facts making it plausible that Mr. Ubben or VAC Management had control over the TW/Willis Defendants.  *Twombly*, 550 U.S. at 570.

2.  **Plaintiff Cannot Rely On Mere Influence To Plead Control.**

Plaintiff suggests that the ability to influence—as opposed to the possession of power—can show control.  *See* Opp. at 14-15.  Plaintiff is mistaken on the law.

The MPA showed that "because 'actual control is required, the mere power to influence, without also the power to direct, is not enough'" to state a Section 20(a) claim.  MPA at 17 (quoting

*In re Alstom*, 406 F. Supp. 2d at 487 n.50).  The court in *In re Alstom* addressed and rejected the same assertion Plaintiff raises here.  Because "actual control is essential to control person liability," the court held that the "exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)." *Id.* at 487.  To the extent it suggests influence alone establishes control, Plaintiff is wrong.  *Id.* at 487 n.50.

Permitting control person liability based only on influence also is inconsistent with the clear language of Congress.  Neither of the control person provisions of Section 20(a) of the Exchange Act and Section 15(a) of the Securities Act refer to "influence." *See* 15 U.S.C. § 78t(a); 15 U.S.C. § 77o(a).  Only "control."  As the Supreme Court recently noted, "[t]he statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cty. Emplys. Ret. Fund*, 138 S. Ct. 1061, 1069 (2018).  Plaintiff thus wrongly suggests that "influence" can result in liability under Section 20(a). *Id.* at 1078 (a court has "no license to disregard clear language based on an intuition that Congress must have intended something broader").

Likewise, for nearly seventy years, the SEC's definition of control has not been based on influence.  13 F.R. 9321, 9322 (Dec. 31, 1948) (control requires "the possession . . . of the power to direct or cause the direction of the management and policies").  For decades, courts have applied the SEC's definition of control to dismiss control person claims. *See*, *e.g.*, *Winter v. D.J. & M. Inv. & Constr. Corp.*, 185 F. Supp. 943, 947 (S.D. Cal. 1960) (dismissing claim because the defendants did not "possess[] . . . the power to direct or cause the direction of the management and policies of a person . . . ." (citing 17 C.F.R. § 230.405)).  Plaintiff offers no reason to deviate from the SEC's definition. *See Altman v. SEC*, 666 F.3d 1322, 1326 (D.C. Cir. 2011) ("[W]hen Congress revisits a statute giving rise to a longstanding interpretation without pertinent change,

the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." (citation omitted) (quotation omitted)).

Plaintiff's cases do not lead to a different result. Plaintiff's primary case, *Sennott v. Rodman & Renshaw*, is of no moment. 414 U.S. 926 (1973). *Sennott* was not a decision by the Supreme Court. Rather, the opinion was a <u>*dissent*</u> by Justice Douglas from the Supreme Court's denial of certiorari, where the petitioner sought the Court's review of an order dismissing a control person claim under Section 20(a). *Id.* at 927, 931. Plaintiff's other cases likewise fail to support Plaintiff's argument that mere influence shows control, because in those cases the courts found the defendants had direct power over the primary violator or the fraudulent conduct.[3]

### 3.   Plaintiff Must Plead The Possession Of Power To Direct A Controlled Person, Even If That Power Is "Indirect" Or "Otherwise."

Plaintiff concedes it does not plead Mr. Ubben or VAC Management directly possessed the power to control the TW/Willis Defendants. Instead, Plaintiff argues that the power needed for control can be "indirect," and can come from something other than voting securities or by contract. *See*, *e.g.*, Opp. at 14 (citing 17 C.F.R. § 240.12b-2). But Plaintiff must still plead facts making it plausible that VAC Management or Mr. Ubben possessed the power "to direct or cause the direction of the management and policies" of the TW/Willis Defendants. MPA at 17.

---

[3]   *See In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 130-31 (4th Cir. 2009) (Janus Capital Group ("JCG") controlled Janus Capital Management ("JCM") because, among other things: (1) JCG wholly owned JCM, (2) JCG executives controlled JCM, and (3) JCG regulated market timing activity by investment funds managed by JCM); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 610 (E.D. Va. 2015) (Chief Merchandising Officer controlled company's China operations, managed company's worldwide supply chain, and disseminated misleading statements related to company's sourcing practices in China); *Trendsetter Investors, LLC v. Hyperdynamics Corp.*, Civil Action No. H-06-0746, 2007 U.S. Dist. LEXIS 3666, at *78-80 (S.D. Tex. Jan. 18, 2007) (company's chief consultant drafted and distributed investment package that contained the alleged misrepresentations and exercised significant control over the day-to-day operations concerning the disseminated information); *In re MicroStrategy*, 115 F. Supp. 2d at 624 (officers and members of audit committee "prepared, reviewed, executed, and disseminated many . . . of the public reports and/or press releases issued by . . . MicroStrategy").

Plaintiff's authority is in accord.  For example, in *SEC v. Small Bus. Capital Corp.*, the defendant was the sole founder and manager of Small Business Capital Corp. ("SBCC"), which in turn was the sole manager of the LLCs that issued the fraudulent offering documents.  Case No. 5:12-cv-3237 EJD, 2013 U.S. Dist. LEXIS 116607, at \*3-4, 53-54 (N.D. Cal. Aug. 16, 2013).  The defendant's power to direct SBCC thus led to his indirect power to direct the LLCs.  Plaintiff identifies no similar allegations of indirect power in the Complaint.  In *Gruber v. Gilbertson*, the defendants, founders of Dakota Plains Holdings, concealed their control by failing to disclose their ownership of stock and of 73% of Dakota's Consolidated Notes (entitling defendants to millions of additional shares of stock), installing their fathers as officers, and offering shares to friends and family.  No. 16cv9727, 2018 U.S. Dist. LEXIS 45677, at \*3-5, 49-50 (S.D.N.Y. Mar. 20, 2018).  The defendants then used shell companies, stock transfers, and price manipulation to orchestrate a pump and dump scheme to defraud investors.  *Id.*  Here, Plaintiff does not allege the use of such undisclosed majority economic interests or business or family relationships to perpetuate a fraud.

**B.**     **PLAINTIFF FAILS TO IDENTIFY WELL-PLED FACTS MAKING IT PLAUSIBLE THAT VAC MANAGEMENT, THE MANAGER OF A 10% MINORITY STOCKHOLDER OF WILLIS, CONTROLLED THE TW/WILLIS DEFENDANTS.**

"A determination of Section 20(a) liability requires 'an individualized determination' of a defendant's control of the primary violator. . . ."  *In re Alstom*, 406 F. Supp. 2d at 486 (citation omitted).  Plaintiff identifies no well-pled facts making it plausible that VAC Management, the manager of a 10% Willis stockholder, possessed the power to control the TW/Willis Defendants.  *See* MPA at 19-20 (citing *In re BioScrip, Inc. Secs. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y 2015) ("Minority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies, and thus do not constitute sufficient control.")).

In its Opposition, Plaintiff constructs a strawman.  Plaintiff argues "Defendants suggest that control may only be alleged through majority stock ownership or through a contractual right."

Opp. at 16. Plaintiff read the wrong brief. VAC Management does not argue that majority stock ownership is a prerequisite to control. However, it is the case that courts routinely hold minority stockholders lack "the formal ability to control [the] company." MPA at 19 (quoting *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 441 (S.D.N.Y. 2016)).[4] Here, funds managed by VAC Management were not even the largest stockholder of Willis. *See* ¶ 29. Lacking factual allegations making it plausible that VAC Management *possessed the power* to direct the management and policies of the TW/Willis Defendants, Plaintiff fails to plead control. MPA at 19-20.[5]

Plaintiff argues that the courts in VAC Management's cases only considered stock ownership, and no other factors, in dismissing the control person claims. *See* Opp. at 16-17, 23 n.11 & n.12, 28 n.15. Plaintiff is wrong. The courts dismissed control person claims against minority stockholders even when those stockholders were vocal proponents of their interests and had "considerable sway" or "substantial influence" over the companies in which they invested. *See Kuhns*, 202 F. Supp. 3d at 441 (largest minority stockholder's "considerable sway" over the company insufficient to plead the stockholder's control); *In re BioScrip*, 95 F. Supp. 3d at 740 (while Kohlberg and the investment funds it manages have "substantial influence" over BioScrip as a 26% minority stockholder with the ability to appoint a quarter of the board, those facts "do not create power to direct management and policies, and thus do not constitute sufficient control"). Indeed, in *In re Flag*, the court accepted that Verizon "*strong armed*" Flag, but still dismissed the

---

[4]   *See also*, *e.g.*, *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014); *In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 674-77 (N.D. Tex. 2013); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 553 F. Supp. 2d 902, 913 (S.D. Ohio 2008); *In re Alstom*, 406 F. Supp. 2d at 492; *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005).

[5]   Plaintiff's authority is not to the contrary. *See Thomas v. Magnachip Semiconducter Corp.*, 167 F. Supp. 3d 1029, 1036, 1048-49 (N.D. Cal. 2016) (defendant started the class period as the majority owner of 70.3% of the company's stock and, despite selling enough shares to become a minority stockholder, continued "to control most matters requiring stockholder approval, including the election of directors and approval of significant corporate transactions").

control person claim against Verizon because "there is no indication that Flag's management or Flag's Board of Directors _could not have simply declined to comply with Verizon's demand_." 352 F. Supp. 2d at 459 (emphasis added).  The same result follows here.[6]

Plaintiff thus does not identify any well-pled facts making it plausible that VAC Management possessed "the power to direct or cause the direction of the management and policies" of the TW/Willis Defendants.  17 C.F.R. § 240.12b-2.  Instead, Plaintiff ascribes alleged conduct by Mr. Ubben in his capacity as a Willis director to VAC Management.[7]  Mr. Ubben's actions, taken to advance Willis' and its stockholders' interests, cannot be imputed to VAC Management.

"[W]hen acting as outside directors, the outside directors ha[ve] fiduciary duties to act on behalf of the shareholders of the controlled entity itself, _not on behalf of their employers who appointed them to the board_."  In re Kosmos, 955 F. Supp. 2d at 675 (emphasis added).  Plaintiff does not dispute that Mr. Ubben—like all the members of the Willis Board—owed fiduciary duties to Willis and its stockholders.  See MPA at 4, 7-8, 21.  Plaintiff also does not allege that Mr. Ubben breached that duty.  Mr. Ubben's actions as a Willis director cannot be imputed to VAC Management for purposes of control liability under Section 20(a).  See In re Kosmos, 955 F. Supp.

---

[6]   Plaintiff's cases show the need to plead facts making it plausible that a minority stockholder possessed power over the company in which it invested.  _See Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc._, No. 05 Civ. 6745 (RJS), 2008 U.S. Dist. LEXIS 25850, at *6, 21-22, 32 (S.D.N.Y. Mar. 26, 2008) (13% stockholder:  (1) was the Chairman, CEO, Treasurer, and director of iWorld, (2) negotiated and signed the subscription agreement at issue, and (3) faced liability as a primary violator of the securities laws); _see also In re Leslie Fay Cos._, 918 F. Supp. 749, 763-64 (S.D.N.Y. 1996) (defendants, in addition to being investors, "reviewed and signed SEC filings containing fraudulent financial information" and were in a position to control the accounting policies, practices, and financial reporting of the company).

[7]   _Compare_ Opp. at 3 ("The ValueAct Defendants negotiated Haley's undisclosed compensation package."), _with_ ¶ 80 ("Ubben and Haley confidentially negotiated a compensation package for Haley. . . ."); Opp. at 2-3 ("[T]he ValueAct Defendants . . . negotiated the inadequate special dividend for Towers shareholders. . . ."), _with_ ¶ 13 (Mr. Haley discussed the special dividend with Mr. Ubben); Opp. at 9 ("The ValueAct Defendants became actively involved in responding to public criticism."), _with_ ¶ 10 (Mr. Ubben's statement to _Bloomberg_ regarding Driehaus).

2d at 675-76 (dismissing claim against Warburg and Blackstone because "the Court . . . cannot assume that Warburg's and Blackstone's designees on the Kosmos Board of Directors were acting on behalf of Warburg and Blackstone in their capacity as Kosmos directors"); *see also Silsby*, 17 F. Supp. 3d at 371 (Carl Icahn was not a control person even though he employed two individuals on Dynegy's board of directors because the individuals "were not working within the scope of their employment for Icahn when acting in their capacity as Directors of Dynegy.").[8]

### C.   MR. UBBEN'S STATUS AS AN OUTSIDE DIRECTOR DOES NOT SHOW CONTROL.

Plaintiff does not dispute that board membership is insufficient to show control. *See* MPA at 18-19. Instead, Plaintiff argues that being director is a "red light" indicating the potential for control. *See* Opp. at 26-27 (quoting *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 976 (D. Ariz. 2010)). Plaintiff, however, ignores that being a director still "does not create any presumption of control." *Teamsters Local 617*, 690 F. Supp. 2d at 976. Plaintiff must plead facts making it plausible that, as an outside director of Willis, Mr. Ubben possessed the power to direct the TW/Willis Defendants. Plaintiff has not pled those facts.[9]

---

[8] Plaintiff's authority is inapposite because it is based on the incorrect, pre-*Twombly* pleading standard. *See In re American Apparel, Inc. Shareholder Litigation*, Case No. CV 10-06352 MMM (RCx), 2013 U.S. Dist. LEXIS 189797 (C.D. Cal. Aug. 8, 2013). In *In re American Apparel*, the court imputed control by Lion Capital's board designees to Lion Capital. *See Id.* at *139-40, 140 n.262. In so imputing, the Court relied on the holding in *In re Global Crossing, Ltd. Securities Litigation*, No. 02 Civ 910(GEL), 2005 U.S. Dist. LEXIS 26942 (S.D.N.Y. Nov. 7, 2005). *See In re Am. Apparel*, 2013 U.S. Dist. LEXIS 189797, at *140 n.262. The decision in *In re Global Crossing* was in turn based on the Second Circuit's then-binding statement in *Twombly v. Bell Atlantic Corp.* that "dismissal is improper as long as it is at least plausible that plaintiff could develop some set of facts that would pass muster." *In re Global Crossing*, 2005 U.S. Dist. LEXIS 26942, at *28. After *In re Global Crossing* was decided, the Supreme Court reversed the Second Circuit in *Twombly*. Thus, *In re Global Crossing* and its progeny, such as *In re American Apparel*, have no weight. *See Kuhns*, 202 F. Supp. 3d at 441 (rejecting *In re Global Crossing* because the Supreme Court reversed the Second Circuit in *Twombly*).

[9] Plaintiff's authority agrees that additional facts are needed to show control by an outside director, such as by having direct responsibility for the conduct at issue. *See Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 31874, at *9, 44 (N.D. Cal. Feb. 27, 2018) (directors were responsible for addressing problems with the company's "toxic, high-

**D.     PLAINTIFF FAILS TO ALLEGE FACTS MAKING IT PLAUSIBLE THAT VAC MANAGEMENT OR MR. UBBEN OTHERWISE POSSESSED THE POWER TO CONTROL THE TW/WILLIS DEFENDANTS.**

**1.     The Alleged Engagement By VAC Management Or Mr. Ubben With The Merger Process Fails To Show Control.**

VAC Management and Mr. Ubben showed that their alleged engagement in the Merger process does not make it plausible that either was a control person of the TW/Willis Defendants. *See* MPA at 20-23.  In the Opposition, Plaintiff confuses the timeline, overstates the record, and fails to identify well-pled facts showing VAC Management or Mr. Ubben possessed the power to direct the management and policies of the TW/Willis Defendants. *See* Opp. at 21-26.

Plaintiff argues that Mr. Ubben or VAC Management had control because they allegedly directed the structure of the Merger before it was agreed to in June 2015.  Opp. at 21-22.  Not so. The Complaint alleges that from January 2015 through its initial approval by the boards of Willis and TW, representatives of Willis and TW negotiated the Merger.  *See* MPA at 7-8 (citing ¶¶ 2, 17, 35-39, 50, 54, 57-61, 63, 68).  The Complaint does not allege either VAC Management or Mr. Ubben directly negotiated the Merger with TW.  *See* MPA at 7-8.  Plaintiff does not dispute this.[10]

---

pressure sales culture and ill-conceived compensation plan," and failed to address those issues for three years); *Teamsters Local 617*, 690 F. Supp. 2d at 976 (audit committee member was responsible for reviewing the financial statements issued by the company, reviewed those financial statements with management, and sold company stock worth $5.7 million during the class period); *In re Wash. Mut., Inc. Secs., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 509 (W.D. Wash. 2009) (finance committee and audit committee members were responsible for the company's financial statements and risk management policies, and for the deficiencies in each); *In re Adelphia Commc'ns Corp. Secs. & Deriv. Litig.*, No. 03 MD 1529 (LMM), 2007 U.S. Dist. LEXIS 66911, at *31 (S.D.N.Y. Sept. 10, 2007) (directors were knowing or reckless participants in Adelphia's fraudulent debt offerings); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1342 (D. Colo. 1997) (director was aware that company had continuing problems with its accounting firms, recommended the replacement of the CFO, and was on notice of problems with the company's SEC compliance, and yet took no corrective action).  No such facts are pled here.

[10]   Plaintiff asks the Court to ignore the inconvenient detail that, before the June 2015 approval of the Merger, Willis disregarded offers by VAC Management or Mr. Ubben to meet with Towers representatives as part of the Merger negotiations.  *See* Opp. at 25; MPA at 22 (citing ¶¶ 64, 66).

Instead, Plaintiff suggests that the advice Mr. Ubben or VAC Management gave to Willis leadership or its financial advisor during the Merger process shows control. *See* Opp. at 21-22 (citing ¶¶ 62, 66).  Plaintiff is wrong.  *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (cited in Opp. at 26) (GE Capital lacked control even though it "had a strong hand" in Casablanca's debt offering, "work[ed] with Casablanca's management to come up with 'assumptions' for their long-term projections," and participated in the drafting and negotiating of the Purchase Agreement).[11]

Plaintiff also argues that it has pled control because, after it appeared in October and November 2015 that Towers stockholders would not approve the June 2015 Merger terms, Mr. Haley allegedly approached Mr. Ubben to propose increasing the special dividend to be paid to Towers stockholders from $4.87 per share to $10 per share.  *See* Opp. at 22 (citing ¶¶ 124, 125). Plaintiff further claims that it has shown control because Mr. Ubben negotiated with Mr. Haley to extract his promise to return excess capital to the stockholders of the combined WTW in order to achieve a desirable leverage ratio for the company.  *Id.* (citing ¶ 126).  Plaintiff, however, does not allege that Willis gave Mr. Ubben the authority to negotiate on its behalf.  Regardless, being part of negotiations that also included the companies' management teams, boards, and other professionals does not show control.  *See* MPA at 21 (citing *In re Flag*, 352 F. Supp. 2d at 459).

Plaintiff further argues it has shown control because:  (1) Mr. Ubben or VAC Management suggested language for a November 13, 2015 press release from Willis and a November 18, 2015 press release from TW,[12] (2) Mr. Ubben responded negatively to accusations made against VAC

---

[11]   *See also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir. 1986) ("[The Firm's] ability to persuade and give counsel is not the same thing as 'control,' which almost always means the practical ability to *direct* the actions of the people who issue or sell the securities." (emphasis in original)).

[12]   Plaintiff concedes that the Complaint does not allege facts that either statement suggested by

Management by Driehaus Capital Management LLC,[13] (3) VAC Management responded to ISS'

recommendation that TW stockholders vote against the Merger, (4) VAC Management exercised

its right to contact a limited number of TW stockholders in support of the merger, and (5) VAC

Management requested that Willis either file a presentation prepared by VAC Management or

encourage TW to have its stockholders contact VAC Management, even though Willis ignored

these two requests.  *See* Opp. at 3, 22, 25, 26; *see also* MPA at 22 (citing ¶¶ 116-19, 128).  Plaintiff

is wrong.  "To ignore the overall situation but to separate out specific actions undertaken by" VAC

Management or Mr. Ubben, "as the [i]nvestors would have us do, would be an unwarranted

expansion of secondary liability under the securities laws."  *Paracor*, 96 F. 3d at 1162.  None of

these allegations show that VAC Management or Mr. Ubben had the power to direct the

management and policies of the TW/Willis Defendants and the contents of the Proxy Materials.

Plaintiff also does not dispute that Willis ignored VAC Management's requests that Willis

either file a presentation prepared by VAC Management or encourage TW to have its stockholders

contact VAC Management.  *See* MPA at 22 (citing ¶¶ 64, 66, 116-19, 128).  That Willis ignored

these requests shows the inability of either VAC Management or Mr. Ubben to direct the contents

of the Proxy Materials.  *See* MPA at 22 (citing *In re Flag*, 352 F. Supp. 2d at 459).  Plaintiff is

wrong to ask the Court to disregard these inconvenient admissions.  *See* Opp. at 25-26.

It is no surprise that VAC Management or Mr. Ubben was engaged in the Merger process,

---

VAC Management or Mr. Ubben was misleading.  *See* MPA at 27.

[13]  Plaintiff spends much of its Opposition trying to focus the Court's attention on Mr. Ubben's interaction with Matthew Schoenfeld of Driehaus, arguing that interaction "illustrates personal involvement, influence and control."  Opp. at 22 n.10; *see also* Opp. at 3, 8-12, 20, 22, 26.  Plaintiff is wrong.  Being impolite does not show control.  It is the possession of power that shows control.  Moreover, Plaintiff cannot run away from Driehaus' transparent motivation to kill the Merger.  *See* MPA at 10.  As a short seller of Willis stock, Driehaus would profit if it blew up the Merger and the price of Willis stock declined as a result.  *See* TW/Willis Defendants Brief at 8.  Contrary to Plaintiff's suggestion, the only self-interest shown by Driehaus' agitation is that of Driehaus itself.

albeit how they were engaged differed.  Mr. Ubben engaged in the process consistent with his

duties as a director of Willis.  VAC Management, as the manager of a 10% stockholder of Willis,

expressed its views as to the economics of the transaction, including how Willis' favorable tax

treatment would benefit the stockholders of both companies.  *See* MPA at 1.  Such engagement by

either Mr. Ubben or VAC Management falls short of a plausible showing of control—particularly

given the advice of Mr. Ubben or VAC Management during the process was regularly ignored.

*See, e.g.,* ¶¶ 64, 66, 116-19, 128.  *See also* MPA at 22 (citing *In re Flag*, 352 F. Supp. 2d at 459).

**2.     A Discussion About Compensation Philosophy Does Not Show Control.**

In the Opposition, Plaintiff asserts that Mr. Ubben had control because he allegedly

negotiated a compensation agreement with Mr. Haley that did not exist.  Opp. at 19-21.  As shown

in the MPA and by the TW/Willis Defendants, Mr. Ubben and Mr. Haley did not negotiate a

compensation package in September 2015.  *See* MPA at 8-10, 24-25; *see also* TW/Willis

Defendants Brief at 11, 13-14, 23.  Indeed, there could be no compensation agreement because

Mr. Haley needed to negotiate his compensation with Wendy Lane, the chair of the compensation

committee of both Willis and later WTW, *after* stockholders voted to approve the Merger on

December 11, 2015, and the WTW board then needed to approve that package.  *See* MPA at 10,

25; *see also* ¶¶ 81, 86, 152 (Ms. Lane's negotiation of Mr. Haley's compensation package).[14]

Plaintiff does not dispute that Mr. Ubben lacked the authority in September 2015 to bind

WTW to a compensation agreement with Mr. Haley.  *See* MPA at 10, 25 (citing Ex. G ¶ 112(a) &

---

[14]  Plaintiff entirely ignores, and thus admits, the showing in the MPA that there was nothing
unusual or improper about a discussion tying executive compensation to stockholder returns.  *See*
MPA at 9.  Compensation philosophies centered around such realizable pay are both actively
discussed in corporate and academic circles and are the "primary evaluation metric" used by Glass
Lewis, a "leading advisor[] on corporate governance and investment matters."  *See id.* at 9 n.8
(citing ¶ 8).  In addition, Plaintiff does not dispute that to achieve the full $165 million that Plaintiff
claims would have been available to him, *Mr. Haley would have needed to exceed the performance
of WTW's peers by approximately 50%.*  *Id.* at 9.

Ex. H ¶ 2).  Plaintiff also does not dispute that Mr. Ubben was not on the compensation committee

of Willis and that it was not decided Mr. Ubben would serve on the future WTW board or its

Compensation Committee when he allegedly spoke with Mr. Haley in September 2015.  *See* MPA

at 25 n.16.  Instead, Plaintiff argues that Defendants cite "no case law supporting that Plaintiff

needs to show authority to bind a controlled person."  Opp. at 20.  Plaintiff, however, cites that

case law.  *See Paracor*, 96 F.3d at 1163-64 (cited in Opp. at 26) (Casablanca's CEO was not a

control person because he "*was not authorized to act for Casablanca on the matter* and was not

involved in the preparation of any of the offering materials" (emphasis added)).  In the alternative,

Plaintiff asks the Court to ignore the inconvenient detail that Mr. Ubben lacked the authority to

bind WTW.  *See* Opp. at 20.  The lack of authority by Mr. Ubben to negotiate Mr. Haley's

compensation is, of course, relevant because it goes directly to Plaintiff's failure to plead that Mr.

Ubben possessed the power to direct the management and policies of the TW/Willis Defendants.[15]

### 3.    A Reference To "Control" In An Internal Email Does Not Make It Plausible That Mr. Ubben Or VAC Management Possessed The Power To Direct The TW/Willis Defendants.

Mr. Birtwell's comment in a November 14, 2015 email that Mr. Haley "is seeing in real

time how much control we [ValueAct] have over the Board room," ¶ 136, fails to plead control

under Section 20(a).  *See* MPA at 23-24.  The Complaint's out-of-context reference to Mr.

Birtwell's use of "control" is "largely irrelevant in determining whether the complaint alleges

control person liability" under the securities laws.  MPA at 23 (citing *In re Kosmos*, 955 F. Supp.

---

[15]   In finding control, the courts in Plaintiff's cases found far more was alleged than the negotiation of an agreement.  *See In re Tetra Techs. Inc., Secs. Litig.*, Civil Action No. 4:08-cv-0965, 2009 U.S. Dist. LEXIS 126825 & 2009 U.S. Dist. LEXIS 126687, at *117 (S.D. Tex. Aug. 10, 2009) (Maritech's President was at meetings with insurance adjusters, was involved in weekly meetings to discuss insurance receivables, and faced liability for a primary violation of Section 10(b)); *see also Longview Equity Fund, L.P.*, 2008 U.S. Dist. LEXIS 25850, at *6, 21-22, 32 (Chairman, Chief Executive Officer, Treasurer, and director of iWorld also faced liability as a primary violator of Section 10(b)).  Those facts are not alleged here.

2d at 676 (dismissing control person claim even though company described defendants as part of a "control group" under stock exchange rules)).

Plaintiff asks the Court to ignore *In re Kosmos* and instead find that Mr. Birtwell's email constitutes an admission of control person liability. Opp. at 18-19. Plaintiff is wrong to ignore *In re Kosmos*. Plaintiff's authority shows that, to plead an admission of "control," defendants must have admitted *facts* showing that control. *See SEC v. Small Bus. Capital Corp.*, Case No. 5:12-cv-3237 EJD, 2013 U.S. Dist. LEXIS 116607, at *3-4, 53-54 (N.D. Cal. Aug. 16, 2013) (defendant admitted that his company managed investment funds and that he "*was the final authority on the approval of offering documents*" from the funds (emphasis added)); *see also SEC v. Smith*, Case No. C2-cv-04-739, 2005 U.S. Dist. LEXIS 21427, at *30-31 (S.D. Ohio Sept. 27, 2005) (defendant admitted he (1) was "the founder, chairman, treasurer, and sole director of" Continental Midwest Financial and Scioto National and (2) was responsible for making the financial decisions of Continental and Scioto). Plaintiff does not allege any similar admissions of fact in the Complaint.

Plaintiff does not meaningfully address the other arguments in the MPA that the Complaint's reference to Mr. Birtwell's email fails to plead control. *See* MPA at 24. For example, Plaintiff admits it altered Mr. Birtwell's email to suggest he referred to VAC Management. *See* Opp. at 19. Plaintiff, however, does not identify any well-pled facts in the Complaint supporting this alteration. *See* MPA at 24. Plaintiff also fails to address the argument that the Complaint does not allege what Mr. Birtwell meant by his use of "control," such as if he meant something less than the power to direct the Willis Board. *See* MPA at 24.[16] Finally, Plaintiff identifies no well-pled

---

[16]   Indeed, Mr. Birtwell's comment suggests his frustration with Mr. Haley's actions. Such frustration is inconsistent with having the power to direct either the Willis Board or Mr. Haley, demonstrating why courts look to alleged admissions of *facts* evidencing control, rather than an out-of-context statement from a non-attorney who may use the term differently than its use under the securities laws.

facts showing how the Willis directors, who included current or former business executives, a former member of the United Kingdom Parliament, and a former Michigan state treasurer, were under the control of Mr. Ubben or VAC Management.  *See* MPA at 7 n.6, 24.  Mr. Birtwell's email does not excuse Plaintiff's failure to plead facts stating a plausible claim of control.

### 4. Mr. Ubben's Signature On The October 2015 Registration Statement Fails To Show Control.

For the first time in its Opposition, Plaintiff argues that Mr. Ubben had control because he signed the Registration Statement filed by Willis with the SEC on October 13, 2015.  *See* Opp. at 17-18.  Plaintiff's argument is an improper attempt to amend the Complaint through its Opposition. *See*, *e.g.*, *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (disregarding argument raised in plaintiff's opposition because it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss").

Even if the Court were to consider Mr. Ubben's signature on the October 13, 2015 Registration Statement, Plaintiff still fails to show control over any material misstatement or omissions.  A signature on an SEC filing at most creates a *presumption* of control over that document.  *See* Opp. at 17 (citing *In re BioScrip*, 95 F. Supp. 3d at 741).[17]  However, the alleged power to sign or not to sign a registration statement falls short of showing "control over the day-to-day operations" or "the direction of *management and policy*."  *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1134 (D. Colo. 2017) (dismissing control person claim even assuming representatives of venture capital funds had the power to sign Clovis' registration statement).[18]

---

[17]  Plaintiff's case law agrees.  *See In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) (adopting the view the court could "presume" control from a signature).

[18]  Plaintiff's cases show that a signature on an SEC filing is but one component of a finding of control.  *See In re BofI Holding, Inc. Secs. Litig.*, Case No. 3:15-cv-02324-GPC-KSC, 2017 U.S. Dist. LEXIS 79062, at *72-79 (S.D. Cal. May 23, 2017) (BofI's Chief Financial Officer attended weekly meetings with BofI's CEO and Senior Vice Presidents, authored and made statements to BofI's investors on five occasions, and reiterated BofI's financial results on nine analyst calls); *see*

In addition, Plaintiff's reliance on the October 13, 2015 Registration Statement is misplaced.  Plaintiff's sole criticism of the October 13, 2015 Registration Statement is that the statement fails to disclose Mr. Haley's alleged conflict arising from his supposed agreement "on a compensation package . . . valued at up to $165 million over the next three years."  ¶ 163; *see also* ¶¶ 164, 168, 170, 173, 175, 178, 180.  Even assuming there was an agreement (there was not), Plaintiff's criticism is absurd because it ignores the timing of events.  The Registration Statement sought stockholder approval of the terms of the Merger negotiated by Mr. Haley and formally approved by the Willis and TW boards of directors *on and before June 27, 2015*.  *See* ¶ 69. However, Plaintiff alleges that Mr. Ubben and Mr. Haley discussed compensation on September 10, 2015.  ¶ 80.  The Complaint thus fails to allege facts showing the materiality of information about an alleged discussion that took place months after the June 2015 Merger agreement.  Mr. Ubben faces no liability for signing the October 13, 2015 Registration Statement.  *See* MPA at 27 (citing *In re Flag*, 352 F. Supp. 2d at 469 (dismissing Section 20(a) claim where Plaintiff failed to allege defendant had any involvement in the preparation of a false or misleading disclosure)).

**5.     Plaintiff's Factual Allegations, Taken Together, Fail To Show Control.**

Plaintiff's cases show that the Complaint as a whole falls well short of pleading facts making it plausible that VAC Management or Mr. Ubben possessed the power to direct the TW/Willis Defendants.  Indeed, in Plaintiff's remaining cases, the courts held that *officers* faced control person liability.  *See, e.g., In re Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (CEO, Senior and later Executive Vice President of Product Development, and

---

*also Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 831-32 (E.D. Va. 2014) (Commonwealth's CFO and Principal Accounting Officer and directors were responsible for the accuracy of Commonwealth's financial statements or for administering its asset/liability policies); *In re Leslie Fay*, 918 F. Supp. at 763 (defendants controlled the company's accounting policies, practices, and financial reporting).

Executive Vice President Retail Distribution).[19]  However, "an outside director and an officer . . . occupy very different positions in relation to the day-to-day management and operation of the company."  *In re Alstom*, 406 F. Supp. 2d at 488 n.51.  An officer thus has the power to control a corporation in a way that an outside director, much less a 10% minority stockholder, does not.  *Id.*

Plaintiff fails to identify any well-pled facts in the Complaint making it plausible that the manager of a 10% minority stockholder of Willis or one of Willis' eleven outside directors possessed the power to direct the management and policies of Willis, TW, and their respective CEOs.  Count II of the Complaint should be dismissed as to VAC Management and Mr. Ubben.

### E.   PLAINTIFF CANNOT SHOW MR. UBBEN OR VAC MANAGEMENT WAS A CULPABLE PARTICIPANT IN THE ALLEGED SECTION 14(A) VIOLATIONS.

The Complaint also should be dismissed because it does not allege that Mr. Ubben or VAC Management culpably participated in the Section 14(a) violations.  *See* MPA at 4, 26-28.  Plaintiff argues that culpable participation is not an element of a Section 20(a) claim, and that defendants must prove "good faith" as an affirmative defense.  Opp. at 29.  Plaintiff is wrong.  But even if Plaintiff is correct, the Complaint should be dismissed for establishing an affirmative defense.

### 1.   Plaintiff Must Plead And Prove Culpable Participation.

The Fourth Circuit has noted that Section 20(a) reflects the "intent of Congress . . . to impose liability only on those who fall within its definition of control and who are in some meaningful sense culpable participants in the acts perpetrated by the controlled person."  *Carpenter*, 594 F.2d at 394.  Based on that Congressional intent, courts within this circuit and elsewhere have required a plaintiff to plead and prove culpable participation.  *See, e.g., In re*

---

[19]   *See also Levy v. Gutierrez*, Civil No. 14-cv-443-JL, 2017 U.S. Dist. LEXIS 68016, at *39-40, 56 (D.N.H. May 4, 2017) (general counsel); *Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1206-08 (N.D. Cal. 2012) (among other officers, Corporate Controller, CFO, President and CEO, and COO); *In re Sonus Networks, Inc. Secs. Litig.*, Civil Action No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272, at *89 (D. Mass. May 10, 2006) (CEO and CFO).

*BearingPoint, Inc. Secs. Litig.*, 525 F. Supp. 2d 759, 780-81 (E.D. Va. 2007), *remanded on other grounds*, *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009).[20] Requiring a plaintiff to plead culpable participation also is consistent with *Twombly* and *Iqbal*, where the Supreme Court made clear that a plaintiff should not be granted the keys to discovery on a claim that has no plausibility of relief. *See* MPA at 14-15.[21]

### 2.    Plaintiff Admits The Affirmative Defense Of "Good Faith."

Even if Plaintiff is correct that VAC Management and Mr. Ubben must show "good faith" as an affirmative defense, the Complaint must still be dismissed.  It is well-settled that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Ashe v. PNC Fin. Servs. Group*, 652 Fed. Appx. 155, 157 (4th Cir. 2016).  That is the case here. *See* MPA at 27.

The Complaint alleges all facts necessary to support a good faith defense.  Plaintiff unequivocally states that its claims are based on negligence and nothing more:

> *Lead Plaintiff's claims are based on negligence.  They are not based on any knowing or reckless conduct by or on behalf of Defendants*, and Lead Plaintiff *specifically disclaims any allegations of fraud, scienter, or recklessness in these non-fraud claims*. . . .

Complaint at 1-2 (emphases added).  Negligence, however, does not satisfy the state-of-mind condition for Section 20(a) liability. *See* MPA at 26 (citing *Carpenter*, 594 F.2d at 394).[22]  In

---

[20]   *See also*, *e.g.*, *Walker v. Cardinal Sav. & Loan Ass'n*, 690 F. Supp. 494, 500 (E.D. Va. 1988); *Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14-cv-9435 (SHS), 2016 U.S. Dist. LEXIS 39179, at *18 (S.D.N.Y. Mar. 25, 2016); *In re Alstom*, 406 F. Supp. 2d at 490.

[21]   Plaintiff accuses defendants of misleadingly stating that there is a split of authority as to the need to plead culpable participation.  Absolutely not.  Plaintiff's "clear precedent" is anything but clear. *See* Opp. at 29 n.16 (citing *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 130 (4th Cir. 2008)).  The Supreme Court reversed *In re Mut. Funds*, holding the plaintiff failed to state a claim for a primary violation under Section 10(b). *See Janus Capital Group, Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011).  With the reversal of the Section 10(b) claim, the Section 20(a) claim no longer stood and the analysis in *In re Mutual Funds* became *dicta*. *See id.* at 141 n.5.

[22]   Plaintiff suggests without citation that there is no state-of-mind requirement for a Section 20(a) claim based on a Section 14(a) violation. *See* Opp. at 30 n.17.  Plaintiff is wrong.  "The controlling

addition, the Complaint identifies only two statements suggested to TW or Willis by VAC Management or Mr. Ubben.  *See* MPA at 27.  Plaintiff fails to show those statements were misleading.  *See supra* at 11 n.11.  The affirmative defense of good faith thus appears on the face of the Complaint.  Count II against Mr. Ubben and VAC Management should be dismissed.[23]

### F.     THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND.

Plaintiff argues that it should be granted leave to amend.  *See* Opp. at 30.  Dismissal should be with prejudice.  The Complaint is the second attempt to state a claim in this action, which follows a year-and-a-half of litigation of the Appraisal Action by Regents' counsel.  *See* Complaint for Violations of the Securities Exchange Act of 1934 (ECF No. 1); *see also* MPA at 12 n.10. Plaintiff had every opportunity to plead its case.  *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) ("an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim").

## III.   CONCLUSION

For the reasons stated above and in the MPA, the Complaint as against Defendants Jeffrey W. Ubben and VAC Management should be dismissed with prejudice.

---

person provisions contain a state-of-mind condition that requires a showing of something more than negligence to establish liability." *Carpenter*, 594 F.2d at 394; *see also Furlong Fund*, 2016 U.S. Dist. LEXIS 39179, at *18 (dismissing Section 20(a) claim because, in part, plaintiff did not plead culpable participation by the alleged controlling persons in alleged Section 14(a) violations).
[23]   Plaintiff argues that if it must plead culpable participation, then the Complaint shows that Mr. Ubben or VAC Management "knew or should have known" of the Section 14(a) violations.  *See* Opp. at 30.  Plaintiff, however, cannot reconcile this argument with its choice to disclaim "knowing or reckless conduct by or on behalf of Defendants."  Complaint at 1-2.  Plaintiff should be held to its pleading.  *See, e.g., Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400 (NRB), 2008 U.S. Dist. LEXIS 74388, at *19 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (alterations omitted) (citation omitted)).  Regardless, the Court should not infer a strong inference of scienter because VAC Management, the manager of a 10% minority stockholder, or Mr. Ubben, an outside director, would have relied on the officers and professionals at Willis and TW for the accuracy of the Proxy Materials.  *See* MPA at 27-28.

Dated:  May 14, 2018    Respectfully Submitted,

       /s/ *Ryan D. Frei*
       Ryan D. Frei (VSB No. 70996)
       MCGUIREWOODS LLP
       Gateway Plaza
       800 East Canal Street
       Richmond, VA 23219
       Tel: (804) 775-1134
       Fax: (804) 698-2168
       rfrei@mcguirewoods.com

       Robert J. Farlow (VSB No. 87507)
       MCGUIREWOODS LLP
       1750 Tysons Boulevard, Suite 1800
       Tysons, VA  22102
       Tel: (703) 712-5005
       Fax: (703) 712-5195
       rfarlow@mcguirewoods.com

       -and-

       Richard S. Horvath, Jr. (*pro hac vice*)
       ALLEN MATKINS LECK GAMBLE MALLORY &
        NATSIS LLP
       Three Embarcadero Center, 12th Floor
       San Francisco, CA  94111-4074
       Tel: (415) 837-1515
       Fax: (415) 837-1516
       rhorvath@allenmatkins.com

       *Counsel for Defendants Jeffrey W. Ubben and ValueAct Capital Management, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of May 2018, a true and correct copy

of the foregoing document was filed using the CM/ECF System which will send a notice of

electronic filing (NEF) to all counsel of record.

*/s/ Ryan D. Frei*
Ryan D. Frei (VSB No. 70996)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1134
Fax: (804) 698-2168
rfrei@mcguirewoods.com

*Counsel for Defendants Jeffrey W. Ubben and
ValueAct Capital Management, L.P.*
