IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| )<br>) | |
| IN RE WILLIS TOWERS WATSON PLC    )<br>PROXY LITIGATION                                       )<br>)<br>)<br>_____) | Civil Action No. 1:17-cv-1338 (AJT/JFA) |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this putative class action, Plaintiff Regents of the University of California ("Plaintiff")

alleges violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78a *et seq*., in connection with proxy solicitations for the merger

between Towers Watson & Co. ("Towers") and Willis Group Holdings plc ("Willis") resulting in

merged entity Willis Towers Watson plc ("WTW").[1]

By Order dated July 11, 2018, this Court dismissed the Amended Complaint [Doc. 49]

("Amended Complaint" or "Am. Compl.") based on the statute of limitations and a failure to

adequately allege that the relied upon misrepresentations and omissions were material.  *See In re*

*Willis Towers Watson plc Proxy Litig*., 2018 WL 3423859 (E.D. Va. July 11, 2018) ("July 11

Order"). Plaintiff appealed and on August 30, 2019, the United States Court of Appeals for the

Fourth Circuit reversed and vacated this Court's July 11 Order. *In re Willis Towers Watson plc*

*Proxy Litig.*, 937 F.3d 297, 309 (4th Cir. 2019). In its opinion, the Fourth Circuit concluded,

*inter alia*, that the Plaintiff's claims were not barred by the applicable statute of limitations and

that materiality had been adequately pleaded. It therefore remanded this action for further

---

[1] The Defendants in this action are: WTW; Towers; Willis, John Haley, Towers' former chairman and
CEO and the current CEO of WTW ("Haley"); Dominic Casserley, Willis' former CEO ("Casserley");
ValueAct Capital Management, L.P. ("ValueAct"); and Jeffrey Ubben, ValueAct's CEO ("Ubben").

proceedings and identified the following three "issues of first impression in this circuit" under the Exchange Act and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which were preserved on appeal and previously un-addressed by this Court:

(1) Does a Section 14(a) claim that sounds in fraud require a particularized pleading of scienter?

(2) Can a Section 14(a) claim sound in negligence instead of fraud?

(3) If a Section 14(a) claim does sound in negligence, must the complaint nonetheless include particularized allegations of negligence?

*Id.* at 307-08.

Following remand, Defendants' renewed their pending motions to dismiss. Specifically, those motions are:

(1) the Renewed Motion to Dismiss the Amended Complaint [Doc. 89] by Defendants Towers, Willis, WTW, Haley, and Casserly (collectively, the "TW/Willis Defendants") (the "TW Motion"); and

(2) the Renewed Motion to Dismiss the Amended Complaint [Doc. 87] by ValueAct and Ubben (collectively, the "ValueAct Defendants") (the "VA Motion").

In these motions, the TW/Willis Defendants contend that the action should be dismissed based on the issues raised by the Fourth Circuit. The ValueAct Defendants separately contend that, even if the Court denies the TW Motion and permits Plaintiff's Section 14(a) claim to proceed, Plaintiff has nevertheless failed to state a plausible claim against either ValueAct or Ubben for "control person" liability under Section 20(a).

For the reasons stated below, the Court concludes as follows:

(1) a Section 14(a) claim that "sounds in fraud" does not require a particularized pleading of scienter;

(2) a Section 14(a) claim can sound in "negligence" rather than fraud; and

(3) a Section 14(a) claim does not need to include particularized allegations of negligence.

Based on these conclusions of law, when applied to the allegations in the Amended Complaint, Plaintiff has adequately pled its Section 14(a) and 20(a) claims; and the TW Motion and the VA Motion are **DENIED**.

## I. BACKGROUND[2]

The Court incorporates herein by reference its recitation of the alleged facts, as set forth in its July 11, 2018 Order [Doc. 49]. Briefly summarized, after negotiations between Towers and Willis during the first half of 2015, the Towers board unanimously agreed to a merger with Willis and on June 30, 2015, Towers and Willis publicly announced a merger of the two companies, which was described as a "merger of equals." Am. Compl. at ¶ 2. Reflecting previous discussions, the merging companies also agreed that Defendant Haley would serve as the CEO of WTW, the merged company, and Defendant Ubben, CEO of ValueAct and a major investor in Willis, would serve as a director of WTW and on its compensation committee. Am. Compl. at ¶¶ 57-58, 85.

On September 10, 2015, weeks before a planned shareholder vote on the proposed merger, Haley and Ubben met to discuss Haley's potential compensation as CEO of WTW. *Id.* at ¶ 80. At this meeting, Haley and Ubben confidentially negotiated a compensation package for

---

[2] Because this action is at the motion to dismiss stage, the Court will accept as true for the purposes of the motions the facts alleged in the Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Haley which included performance incentives of restricted stock "that could multiply 300% based on whether the company achieved certain benchmarks in its stock price performance," and, assuming the new company hit its financial targets, was worth up to $165 million over three years, more than double Haley's then-compensation of $25 million per year as Towers' CEO. *Id*. The then-chair of the Willis Board's Compensation Committee was not fully aware of these negotiations until ten days after the Towers shareholders approved the merger, *id.* at ¶ 86; and Haley never disclosed the compensation plan to either Towers' shareholders or the Towers board prior to the merger vote, *id.* at ¶ 87.

On October 13, 2015, Towers filed its initial proxy statement ("Proxy") regarding the proposed merger with the SEC. *Id.* at ¶ 97. However, that "Proxy omitted to disclose anything about Haley's compensation agreement with ValueAct and Willis, including the material fact that Haley had worked with ValueAct and Willis to secure a compensation package valued at up to $165 million over the next three years." *Id*. at ¶ 98. Additionally, that Proxy "falsely assured investors that the Towers Board was 'aware of' and had 'considered conflicts of interests,'" even though Haley had not disclosed the alleged $165 million compensation plan to the board. *Id.* at ¶ 99.

After Towers filed its Proxy, analysts and investors heavily criticized the proposed merger. One major investor, Driehaus Capital Management, was especially outspoken in its disapproval, raising questions about the fairness of the deal to Towers' shareholders and about Haley's personal interest in the deal. *Id.* at ¶ 90. Against this backdrop and to avoid the risk of a failed shareholder vote, on November 10, 2015, Haley approached Ubben, a key negotiator working on behalf of Willis, to propose an increase in the special dividend to the Towers shareholders from $4.87 per share to $10 per share. *Id*. at ¶ 124. This amount, however, was not

the maximum Haley believed he could obtain for Towers' shareholders, but only "the minimum that [was] need[ed] to have a reasonable expectation of shareholder approval." *Id*. According to Haley's notes at the time, the $10 figure "[d]idn't trouble [Ubben]." *Id.* at ¶ 125.

On November 19, 2015, Towers announced the revised terms of the merger, which reflected the $10 per share special dividend for Towers' shareholders. *Id.* at ¶ 142. On November 27, 2015, Towers and Willis jointly-filed a proxy update ("Proxy Update") with the SEC. The Proxy Update included a summary purporting to disclose the further negotiations that occurred between Towers and Willis after the merger was initially proposed; however, "[n]owhere did the Proxy Update disclose Haley's compensation arrangement or conflict of interest, or that, upon renegotiating the deal, he sought only the minimum additional consideration." *Id.* at ¶¶ 146-47. On December 11, 2015, the Towers shareholders voted to approve the merger, which officially closed on January 4, 2016. *Id.* at ¶ 152.

On November 21, 2017, the Plaintiff filed the initial complaint, which was later amended on March 9, 2018. *See* [Doc. 49]. In the Amended Complaint, Plaintiff asserts two counts. Under Count I, Plaintiff alleges that WTW, Towers, Willis, Haley, and Casserley "were at least negligent in filing the Proxy, Proxy Update, and proxy solicitations" by failing to disclose Haley's conflict of interest, his compensation package, his failure to negotiate for more than the minimum necessary special dividend, and Ubben's involvement in the negotiation process. *Id.* at ¶ 231. In Count II, Plaintiff asserts supervisory liability for the Sections 14(a) violations against Haley, Casserly, Ubben, and ValueAct. *Id.* at ¶ 237. As relief, Plaintiff seeks, *inter alia*, compensatory damages, declaratory judgment that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Plaintiff's attorneys' fees and costs. *Id.* at ¶¶ 75-76.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Thus, a claim should be dismissed only "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true" and construing the complaint liberally in favor of the plaintiff, "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).

In addition, unless otherwise required, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face").

### B.  Federal Rule of Civil Procedure 9(b)

Where a complaint contains claims that sound in fraud, these claims implicate the heightened pleading standard under Rule 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  In other words, Rule 9(b) asks that a plaintiff, alleging claims sounding in fraud, "must, at

a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (internal quotations and citation omitted). Notably, although claims may not include fraud as an element, Rule 9(b) refers to "alleging fraud" and therefore, all claims that sound in fraud must satisfy Rule 9(b)'s heightened pleading requirements. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (extending Rule 9(b) to claims, sounding in fraud, made under Sections 11 and 12(a)(2) of the Exchange Act, neither of which include fraud as an element).

### C. The Private Securities Litigation Reform Act of 1995

Enacted to serve the complimentary goals of "curb[ing] frivolous, lawyer-driven litigation" and "preserving investors' ability to recover on meritorious claims," *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the PSRLA imposes additional pleading requirements with respect to any action brought under the Exchange Act. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) (observing that the PSLRA applies to "'any private action' arising from the Securities Exchange Act" (quoting 15 U.S.C. § 78u-4(b)). In this regard, the PSLRA represents a departure from the Federal Rules. Instead of allowing a court to consider *any* set of facts that could be proved consistent with the allegations of the complaint (including facts that have not been specifically alleged), the PSLRA authorizes courts to assume that the plaintiff has stated *all* the facts upon which he bases his allegation of misrepresentation. *See Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 344 n.4 (4th Cir. 2003) ("[T]he heightened pleading requirements of the PSLRA supersede the requirements of Federal Rule of Civil Procedure 9(b) in securities fraud cases . . . .").

To this end, the PSLRA mandates that when a plaintiff alleges that a defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements . . . not misleading," that plaintiff must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading[.]" 15 U.S.C. § 78u-4(b)(1). And "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The PSLRA also requires that in any action in which "the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind," the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A "strong inference" arises "'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011) (quoting *Tellabs*, 551 U.S. at 323).

Importantly, if a complaint fails to meet the applicable PSLRA requirements, a court "shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).

## III. ANALYSIS

### A. Does a Section 14(a) claim that sounds in fraud require a particularized pleading of scienter?

The TW/Willis Defendants contend that Section 14(a) claims that sound in fraud must satisfy the particularized pleading requirements of Rule 9(b) and the PSLRA, which includes an obligation to plead a "strong inference" of scienter. [Doc. 89 ("TW Memo.") at 9-20]. Plaintiff contends that, even if its Section 14(a) claim sounds in fraud, the PSRLA's heightened pleading requirements with respect to scienter do not apply. [Doc. 95 at 11-16].

The PSLRA requires that where a "plaintiff may recover money damages *only on proof that the defendant acted with* a *particular state of mind*, the complaint *shall*, with respect to each act or omission alleged to violate this chapter, *state with particularity* facts giving rise to a *strong inference* that the defendant acted with the *required state of mind*." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). Whether Plaintiff must make such a particularized pleading of scienter therefore depends on whether a Section 14(a) claim requires that a defendant act with a particular state of mind.

Section 14(a) of the Exchange Act makes it unlawful for any person "to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security" in violation of the rules and regulations prescribed by the Securities and Exchange Commission (the "Commission"). 15 U.S.C. § 78n(a)(1). And pursuant to this prohibition, Rule 14a-9, promulgated by the Commission, provides that "no solicitation . . . shall be made by means of any proxy statement . . . containing any statement which, . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9(a). Thus, to state a claim under Section 14(a), a plaintiff must allege and prove that a defendant solicited or permitted the use of his name to solicit any proxy, consent or authorization in respect of any security and that "(1) the proxy statement contained a material misrepresentation or omission; (2) that caused the plaintiff injury; and that (3) the proxy solicitation was an essential link in the accomplishment of the transaction." *Hayes v. Crown Centr. Petrol. Corp.*, 78 F. App'x 857, 861

(4th Cir. 2003) (per curiam) (citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3rd Cir. 1992) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970))).[3]

The language of Section 14(a) and the applicable regulation, 17 C.F.R. § 240.14a-9(a), do not specify a particular a state of mind. And courts have reached somewhat different conclusions concerning whether scienter—*i.e.*, fraudulent intent or recklessness—is a requirement. At least two circuits hold that in certain limited contexts Section 14(a) *does* require scienter. *See SEC v. Shanahan,* 646 F.3d 536, 546-47 (8th Cir. 2011) (scienter is necessary for outside directors and accountants)*; Adams v. Standard Knitting Mills, Inc.,* 623 F.2d 422, 428-30 (6th Cir. 1980) (same). Others have held otherwise. *See, e.g.*, *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) ("There is no required state of mind for a violation of section 14(a).").

Neither the Supreme Court nor the Fourth Circuit has decided the issue. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 n.5 (1991); *Hayes*, 78 F. App'x at 861. However, the Supreme Court, in interpreting language substantially the same as in Rule 14a-9, has held that a simple prohibition of false or misleading statements of material fact does *not* imply scienter. Section 11 of the Securities Act of 1933 ("Securities Act"), like Section 14 and Rule 14a-9, "proscribes a type of disclosure or lack of it, i.e., false or misleading statements or omissions of material facts, . . . [and] enumerates specific classes of individuals who bear liability for failure to meet the required standard of disclosure," *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976); and in *Omnicare Inc. v. Laborers Dist. Council Constr. Indus.*

---

[3] In its August 30 opinion, the Fourth Circuit held that Plaintiff adequately alleged materiality with respect to the alleged false and misleading statements and omissions in proxy statements. *See* 937 F.3d at 306-07 ("A jury could . . . reasonably conclude that disclosing the secret compensation discussions between Haley and Ubben would have changed the total mix of information available to shareholders," and therefore the "plaintiffs have sufficiently alleged that the omitted facts," at the center of its Section 14(a) claim, "were material").

*Pension Fund,* 575 U.S. 175, 179 (2015), the Supreme Court concluded that Section 11 claims

do not require plaintiffs to "prove (as [they] must to establish certain other securities offenses)

that the defendant acted with any intent to deceive or defraud."  *See also Herman & Maclean v.*

*Huddleston*, 459 U.S. 375, 381-82 (1983).

The Supreme Court has likewise concluded that the same is true with respect to Section

17(a)(2) of the Securities Act.  Like Section 11 of the Securities Act and Section 14(a) and Rule

14a-9, Section 17(a)(2) is silent as to any scienter requirement but prohibits any person from

obtaining money or property "by means of any untrue statement of a material fact or any

omission to state a material fact," 15 U.S.C. § 77q(a)(2). In *Aaron v. SEC*, 446 U.S. 680, (1980),

the Supreme Court concluded that because Section 17(a)(2) is "devoid of any suggestion

whatsoever of a scienter requirement," scienter is not required. *Id.* at 696. Like Sections 11 and

17(a)(2) of the Securities Act, Section 14(a) only requires proof that a proxy solicitation contains

a " statement which, . . . is false or misleading with respect to any material fact, or which omits

to state any material fact necessary in order to make the statements therein not false or

misleading . . . ." 17 C.F.R. § 240.14a-9(a).  And like Sections 11 and 17(a)(2), Section 14(a)

does not mention any state of mind requirement.

In support of their position that Plaintiff must plead scienter with respect to its Section

14(a) claim, Defendants point to the similarities in language between Rule 14a-9 and Rule 10b-5,

which also does not contain an express scienter requirement for a private cause of action, but

nevertheless has been construed to impose such a requirement. *See* TW Memo. at 11-13.  But the

imposition of a scienter requirement in Rule 10b-5 is not based on the language common to those

Rules; rather it is based on the reference in Rule 10b-5 to a "manipulative or deceptive device or

contrivance," 17 CFR § 240.10b-5, language absent from Rule 14a-9; *see Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 199 (1976) (relying on Section 10(b)'s use of the words "manipulative," "deceptive," and "contrivance" to imply a scienter requirement in Section 10(b)); *see also In re Digital Island Sec. Litig.,* 357 F.3d 322, 328 (3d Cir. 2004) (construing Section 14(e) of the Exchange Act and Rule 14e-3, which includes the fraud-like words found in Rule 10b-5, to require scienter because "of the similarity in the language and scope of Section 14(e) and Rule 10b-5 . . .").[4] In short, while the reference in Section 14(a) to a false or misleading statement or omission "sounds in fraud," that alone is insufficient to impose a scienter requirement. For the above reasons, the Court joins those courts that have concluded that scienter is not an element of Rule 14(a) liability.[5]

The TW/Willis Defendants argue that, even if there is no scienter requirement as to a Section 14(a) claim against WTW, Towers, or Haley, Plaintiff must still plead scienter (*i.e.*, that the defendant acted with fraudulent intent or recklessness) as to both Casserley and Willis under Section 14(a) because both were "outsiders." *See* TW Memo. at 26-28. But the scope of Section 14(a) extends to "any person." 15 U.S.C. § 78n(a)(1). The plain language of Section 14(a), in other words, makes no distinction based on the status or position of the defendant and instead applies to "any person" that "solicit[s] or [permits] the use of his name to solicit any proxy or

---

[4] For other circuits finding that the similarity in language between Rule 14e-3 and Rule 10b-5 imports a scienter requirement into Section 14(e) claims, *see Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *SEC v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004); *Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir. 1987); *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 431 (6th Cir. 1980). *But see Varjabedian v. Emulex Corp.*, 888 F.3d 399, 405 (9th Cir. 2018) (holding that Section 14(e) does not require scienter because, *inter alia*, "if the SEC can prohibit 'acts themselves not fraudulent' under Section 14(e), then it would be somewhat inconsistent to conclude that Section 14(e) itself reaches only fraudulent conduct requiring scienter.").

[5] *See, e.g., Beck*, 559 F.3d at 682 (applying negligence standard); *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987, 995 (2d Cir. 1988*)* (same); *Gerstle v. Gamble-Skogmo, Inc*., 478 F.2d 1281, 1300-01 (2d Cir. 1973) (noting differences between Sections 10(b) and 14(a) and construing Section 14(a) to cover negligent misstatements).

consent or authorization in respect of any security." *Id*. Whether Casserley or Willis played the required role to bring them within the reach of Section 14(a) is subject to further litigation, but, as pled, the Amended Complaint alleges facts that makes that claim plausible against both. *See* Am. Compl. ¶¶ 35, 37, 38, 54, 58, 59, 68, 69, 146, 148, 164. For these reasons, the Court concludes, as other courts have with respect to "outsiders," that Plaintiff's Section 14(a) claim against Casserley and Willis likewise contains no scienter requirement. *See, e.g.*, *Herskowitz v. Nutri/System,* 857 F.2d 179, 190 (3d Cir. 1988); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1266 (N.D. Cal. 2000).

A related issue raised by the Fourth Circuit is whether a Section 14(a) claim *sounding in fraud* must meet the heightened pleading requirements under the PSLRA, including the obligation to plead factual allegations pertaining to any scienter with particularity. Some courts have held it must. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005); *Hershey, v. MNC Fin., Inc.*, 774 F. Supp. 367, 375 n.9 (D. Md. 1991). The Fourth Circuit has not yet answered the question.

As the Court has concluded that a Section 14(a) claim contains no scienter requirement, the issue reduces to whether the PSLRA's particularized pleading requirement still applies to the other elements of Section 14(a). As discussed above, those elements "sound in fraud" because they are based on a misrepresentation or omission. For these reasons, because a Section 14(a) claim, as implemented through Rule 14(a)-9, by its terms, "sounds in fraud," albeit without all the elements necessary to establish actual fraud, including scienter, the heightened pleading requirements of the PSRLA and Rule 9(b) apply to those required elements of a Section 14(a). *See Cozzarelli*, 549 F.3d at 629. Accordingly, a plaintiff must allege with specificity the alleged misrepresentation or omission and why those statements or omissions were false or misleading.

*See, e.g., In re NAHC, Inc. Secs. Litig.*, 2001 U.S. Dist. LEXIS 16754, at *68 (E.D. Pa. 2001)

(dismissing Section 14(a) claim upon noting that "plaintiffs have failed to allege particularized

facts to support the allegation that the statements regarding the following issues were materially

false when the NovaCare defendants issued the proxy materials").

> **B. If a Section 14(a) claim sounds in negligence, must the complaint nonetheless include particularized allegations of negligence?**

The PSLRA's particularity requirement extends to the required "state of mind." 15

U.S.C. § 78u-4(b)(2). As discussed above, the Court finds that a Section 14(a) claim can sound

in "negligence." The open issue then is whether that negligence is a "state of mind" triggering

the particularization of those facts giving rise to a "strong inference" that the defendant acted

with the "required state of mind."

Courts are split on the issue. *Compare Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir.

2009) ("negligence is not a state of mind; it is a failure, whether conscious or even unavoidable

(by the particular defendant, who may be below average in his ability to exercise due care), to

come up to the specified standard of care."); *Wilson*, 855 F.2d at 995 *with Little Gem Life

Sciences LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008); *Knollenberg v.

Harmonic, Inc.*, 152 F. App'x 674, 682 (9th Cir. 2005), *Cal. Pub. Emps.' Ret. Sys. v. Chubb

Corp.*, 394 F.3d 126, 144-45 (3d Cir. 2004).[6]

This Court concludes, as did the Seventh Circuit in *Beck*, that negligence is *not* a state of

mind but a type of culpable conduct, objectively determined. *Beck*, 559 F.3d at 682. *See* W.

Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 31, p. 169 (5th ed. 1984)

---

[6] In an unpublished opinion, the Fourth Circuit has suggested that the PSLRA applies to Section 14(a) claims. *See Hayes*, 78 F. App'x at 861. But *Hayes* did not consider whether there was a "state of mind" element in a Section 14(a) claim that triggers the particularized scienter pleading requirement. *See id*. at 864, n.1.

("negligence is conduct, and not a state of mind"). For the purposes of Section 14(a), "negligence" is the failure to comply with the legal obligation not to solicit a proxy with false or misleading statements or omissions, imposed on an identified category of persons, irrespective of any subjective intent or level of diligence or care. For these reasons, Plaintiff does not need to prove, as Defendants contend, that the Defendants *knew or should have known* the proxy was false or that a defendant did not act *in good faith*. Rather, Plaintiff must only demonstrate that Defendants were subject to and failed to comply with the applicable legal obligation, specifically, not to associate themselves with a proxy statement that contained false or misleading statements or omissions. Therefore, the Court concludes that the PSLRA's heightened scienter pleading requirement, relevant only to "state of minds," does not require particularized allegations of negligence in Section 14(a) claims.[7]

---

[7] The TW/Willis Defendants argue that if negligence is not a state of mind then Section 14(a) claims become strict liability claims. They are essentially correct. *See Gerstle,* 478 F.2d at 1301-02 (disavowing a need for scienter even though it means "the liability of the corporation issuing a materially false or misleading proxy statement is virtually absolute"); *Beck*, 559 F.3d at 682 (finding that a proxy solicitation containing a misrepresentation or omission violates Section 14(a) even where an issuer believes that the information is accurate). Nor is it unique for a securities claim to approximate strict liability. In fact, the TW/Willis Defendants do not dispute that Section 11 of the Securities Act, which assigns liability for a misstatement or omission, is a strict liability cause of action. *See* TW Memo at 22. While the Supreme Court has not squarely addressed this issue as to Section 14(a), it has strongly signaled in cases interpreting Section 14(a) that a plaintiff has sufficiently established under Section 14(a) the liability of a defendant involved in the publication of a proxy by showing that a reasonable shareholder would have considered a misstatement or omission material. *See Mills*, 396 U.S. at 384-85 (1970) ("Where the misstatement or omission in a proxy statement has been shown to be 'material' . . . that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder . . . ."); *TSC Industries v. Northway Inc.*, 426 U.S. 438, 449 (1976) (a defect is material for Section 14(a) "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote"); *Va. Bankshares*, 501 U.S. at 1090-98 (knowingly false statements of reasons, opinions and beliefs are actionable under Section 14(a));

### C. Adequacy of the Amended Complaint

Based on the issues discussed above, the Defendants renew their motions to dismiss for failure to state a claim under Rule 12(b)(6). Based on the Court's rulings as to those issues, the Court finds and concludes that the Amended Complaint alleges facts that make plausible Plaintiff's Section 14(a) claim.

The Fourth Circuit has already determined that, for the purposes of Rule 12(b)(6), Plaintiff has adequately alleged that the alleged omissions from the proxy statements pertaining to Haley's compensation discussions were material. *Willis*, 937 F.3d at 305. The Amended Complaint also contains sufficient detail necessary to satisfy Rule 9(b) and the PSLRA's separate requirement that the Plaintiff "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 US.C. § 78u-4(b)(1). In that regard, the Amended Complaint alleges, in detail, each material omission, the sequence of proxy-related disclosures made by the parties, and the facts underlying the omission, focusing on the alleged compensation agreement between Haley, ValueAct, and Willis; Haley's conflict and the lack of disclosure regarding his alleged compensation agreement with Ubben to the Tower board or stockholders; and Haley's failure to seek the additional compensation for Towers' shareholders upon Towers' renegotiation with Willis. *See generally* Am. Compl. at ¶¶ 162-214.[8] Plaintiff has also alleged facts that make plausible that these Defendants were sufficiently involved in and associated with the relevant proxy disclosures, or non-disclosures, including the November 2015 joint proxy. *See, e.g.*, *id*., at ¶¶ 97, 106, 146-47, 168-69, 187, 195, 209-213.

---

[8] Given the Court's conclusion that there is no scienter or state of mind element to a Section 14(a) claim, there is no basis to dismiss Count I based on the TW/Willis Defendants' contention that the Amended Complaint contains no allegations that any of the Defendants "knew or should have known that the Proxy Materials were deficient" or that Haley (in particular) lacked a good faith belief that his September 2015 meeting was immaterial in light of other disclosures. *See* TW Memo. at 24-25.

For these reasons, the Court concludes that the Amended Complaint adequately alleges its Section 14(a) claim and survives the TW Motion.

### D.  Section 20(a)

Plaintiff also asserts a Section 20(a) claim for control person liability against Defendants Haley, Casserley, Ubben, and ValueAct.   Neither Haley nor Casserley challenge the sufficiency of Plaintiff's allegations that by virtue of their positions as officers and directors of Towers and Willis, respectively, they had the ability to control the activities of their corporations, including in the issuance of the proxy statements, for the purposes of Section 20(a), *see id*. at ¶¶ 35, 37-38, 40-42, 54, 58, 61, 68-69, 146, 193-98; or that the Court should dismiss Plaintiff's Section 20(a) claim against them, even absent a dismissal of the Section 14(a) claim. *See In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 791 (E.D. Va. 2015) (permitting Section 20(a) claim to proceed against defendant upon finding that Plaintiff had adequately pled a primary violation under Section 10(b) of the Exchange Act as against same defendant). However, Defendants Ubben and ValueAct, neither of whom is charged with a violation of Section 14(a), contend that Plaintiff has not adequately pled control liability against them under Section 20(a) of the Exchange Act and that claim should be dismissed, even were Plaintiff's Section 14(a) claims not dismissed. In that regard, they argue that control liability cannot be premised on Ubben's status as an outside Willis director and ValueAct's status as a minority Willis shareholder and that Plaintiff has otherwise failed to allege facts sufficient to make plausible its claim that either ValueAct Defendant exercised sufficient control over any TW/Willis Defendants to impose Section 20(a) liability.

To successfully plead a *prima facie* case of "control person liability" under Section 20(a), a plaintiff must allege: (1) the existence of a primary securities violation committed by the

"controlled" person or actor; and (2) such defendant's "control" over the primary violator. *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129-30 (4th Cir. 2009) *rev'd on other grounds*, *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). A plaintiff is not required, however, to allege culpable participation as an element of the prima face case for control person liability." *Id*. ("[O]nce the plaintiff establishes the prima facie case [of control], the burden shifts to the defendant to show lack of culpable participation or knowledge.") (citation omitted); *see also Masterson v. Commonwealth Bankshares, Inc.,* 2 F. Supp. 3d 824, 830 (E.D. Va. 2014). Thus, for purposes of Section 20(a), there are no heightened pleading requirements, particularly as to scienter or culpability; and a plaintiff need only satisfy Rule 8's short and plain statement requirement. *Id*. at 831, n.4.

The Securities and Exchange Commission defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2. In *In re MicroStrategy, Inc. Sec. Litig*., 115 F. Supp. 2d 620 (E.D. Va. 2000), this Court observed that to plead the control requirement, a plaintiff must:

> plead[] facts showing that the controlling defendant "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . .[and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability."

*Id.* at 661 (quoting *Brown v. Enstar Group, Inc*., 84 F.3d 393, 396 (11th Cir. 1996) (alterations in original)). And in determining whether a defendant possessed the requisite control, "the courts have given heavy consideration to the power or *potential power* to influence and control the activities of a person, as opposed to the actual exercise thereof." *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 602-03 (E.D. Va. 2015) (emphasis added) (quoting *In re*

*Mut. Funds Inv. Litig.*, 566 F.3d at 130). Courts also recognize that control under Section 20(a) "is a complex factual question" that "is not ordinarily subject to resolution on a motion to dismiss." *MicroStrategy*, 115 F. Supp. 2d at 661. And, as such, "dismissal is appropriate only when a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person." *Id*.

While courts recognize that "a party that has always held only a minority share of the company does not, *by virtue of that fact alone*, possess 'control' over that company," *Thomas v. MagnaChip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016) (emphasis added), and the "[s]tatus of defendants as directors, standing alone, is insufficient to establish their control," *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015) (internal quotations and citation omitted),[9] the level of stock ownership and an individual's status as a director is but one factor, among many, in determining whether a defendant had the *potential* power to control a company's general affairs, *In re Corning, Inc. Sec. Litig.*, 349 F. Supp. 2d 698, 722 (S.D.N.Y. 2004) (finding that the existence of a special relationship, such as agency or stock ownership, can establish whether a defendant had the power to control the company's general affairs). The Amended Complaint does not exclusively rely on the ValueAct Defendants' status as an outside director or as a minority shareholder to justify control liability. Rather, the Amended Complaint provides ample factual allegations in support of its claim that both ValueAct Defendants exercised control, both direct and indirect, over the specific actions underlying the alleged violation of Section 14(a). *See Kyung Cho v. UCBH Holdings, Inc.*, 890

---

[9] *See also In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 414 (S.D.N.Y. 2013) (plaintiffs failed to state a claim of control person liability where defendant had 30 percent stock ownership); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005) (concluding plaintiff failed to allege control where defendant possessed 30 percent of voting shares and ability to appoint three of nine board members).

F. Supp. 2d 1190, 1205 (N.C. Cal. 2012) (noting that courts routinely find that "control person liability" is pled adequately where the defendant has responsibility over an area of the company where the underlying misconduct occurred); *Kiken*, 155 F.Supp.3d at 610 (same).

As discussed above, Plaintiff's Section 14(a) claim is centrally based on alleged omissions of material information in proxy solicitations regarding Haley's compensation agreement with ValueAct, which was directly negotiated with Ubben, and a special dividend negotiated between Haley and Ubben after the initial merger disclosure was met with headwinds. The Amended Complaint alleges in this regard that Ubben, as a director of Willis, signed certain Willis SEC filings that contained the Proxy, which in turn contained the false and misleading statements at issue. *See* [Doc. 96, Ex. D at 4, 368]. *See also In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) ("persuasive authority indicates that an officer or director who has signed financial statements containing materially false or misleading statements qualifies as a control person."); *In re Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F. Supp. 2d 1148, 1182 (D. Colo. 2012) (holding that the "Defendants' authority to sign or not sign the registration statements at issue is sufficient indicia of 'control' over the representations and disclosures that went out to potential investors to support 'control person' liability at the pleading stage of this litigation."). Further, Ubben and ValueAct, as alleged in the Amended Complaint, directly negotiated the undisclosed compensation plan at the center of this case, *see* Am. Compl. at ¶¶ 5, 80, and carried out an effort on behalf of Willis to steer the merger towards approval, *see id*. at ¶¶ 56, 64-66 (Ubben and ValueAct involvement regarding exchange ratio for merger), ¶ 62 (ValueAct directing Perella Weinberg Partners, financial advisor to Willis, to "hit the bid"), ¶ 122 (Ubben denounced critics of merger), ¶ 126 (ValueAct renegotiation on behalf of Willis; extracting from Haley that WTW would return excess capital to shareholders to achieve a certain

leverage ratio, which Haley confirmed in post-merger press reports), ¶ 128 (ValueAct contacted Towers shareholders to urge them to vote in favor of merger; Willis referred "on the fence" Towers shareholders to ValueAct), ¶¶ 129-135 (ValueAct inputted own language in Willis' proxy solicitations), ¶ 136 (ValueAct were "the ones securing all of the TW votes;" and in the same internal e-mail between Ubben and a ValueAct employee, both noted that "[Haley] is seeing in real time how much control we [ValueAct] have over the Board room.").  Such facts, when considered as a whole, make plausible Plaintiff's claims of control for purposes of Section 20(a).  *See also Kiken*, 155 F. Supp. 3d at 610 (permitting Section 20(a) claim over a motion to dismiss where complaint alleged that defendant exercised control over the specific policies underlying the misconduct at issue); *Virtus Inv. Partners, Inc. Sec. Litig.,* 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2015) (control adequately pled where, *inter alia*, complaint alleged that defendant co-signed agreements, signed public filings, tracked due diligence for company, and served as a spokesperson on behalf of the company); *Longview Equity Fund, L.P. v. iWorldProjects & Sys. Inc.*, 2008 WL 933230, at *10 (S.D.N.Y. March 26, 2008) (given that "Hipple (1) was the Chairman, Chief Executive Officer, Treasurer and a director of iWorld; (2) was the lead negotiator for iWorld in connection with the Agreement; and (3) signed the Agreement on behalf of iWorld," there was a fair inference that Hipple was a control person under Section 20(a)).[10]

---

[10] The ValueAct Defendants contend that both ValueAct and Ubben lacked control because not every idea that was discussed with the TW/Willis Defendants was implemented.  *See* VA Memo at 11, 22.  In a similar vein, ValueAct and Ubben contend that both lacked control because they did not have a direct role in the merger negotiations and only "evaluated" the merger or principally advised on the merger terms. VA Memo. at 8, 22-24.  But the complete exercise of control in every aspect of a corporation's affairs is not the test.  Rather, the test is whether the defendants exercised sufficient power or potential power to influence and control those aspects of the company's affairs at issue, which the Amended Complaint adequately alleges.  *See Kiken*, 155 F. Supp. 3d at 602-03 ("[C]ourts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof.");  *Mutual Funds*, 566 F.3d at 130 (finding that the question is not whether the defendant

In short, Plaintiff has pled sufficient "control" on the part of both Ubben and ValueAct. Ubben and ValueAct are alleged to have played a key role in the structure of the merger and securing its ultimate approval, including several key aspects of the alleged misconduct, such as negotiating Haley's alleged secret compensation arrangement and the special dividend (now characterized as inadequate by Plaintiff). For the above reasons, Plaintiff has sufficiently pled its Section 20(a) claim.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the TW/Willis Defendants' Renewed Motion to Dismiss [Doc. 87] be, and the same hereby is, **DENIED**; and it is further

ORDERED that the ValueAct Defendants' Renewed Motion to Dismiss [Doc. 89] be, and the same hereby is, **DENIED**; and it is further

ORDERED that further proceedings shall be governed by the Court's Scheduling Order, to be issued.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 31, 2020

---

exercised control, but rather whether he or she had the "potential power to influence and control the activities").

22