**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

IN RE WILLIS TOWERS WATSON PLC
PROXY LITIGATION

Civ. A. No. 1:17:cv-01338-AJT-JFA

<u>CLASS ACTION</u>

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION
<u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .........................................2

       A.    Lead Plaintiff Embarks on an Extensive Investigation and Files the
             Complaint........................................................................................................3

       B.    Defendants' Motions to Dismiss and the Subsequent Appeal .......................4

       C.    The Parties Complete Fact and Expert Discovery .........................................5

       D.    Lead Plaintiff Obtains Certification of the Class ..........................................5

       E.    The Parties Engage in Substantial Trial Preparations and Defendants
             Move for Summary Judgment ........................................................................6

       F.    The Parties' Settlement Negotiations.............................................................6

       G.    Terms of the Proposed Settlement .................................................................7

III.   ARGUMENT......................................................................................................9

       A.    Standards Governing Approval of Class Action Settlements ........................9

       B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement
             Under Rule 23(e)(2).....................................................................................11

             1.     Lead Plaintiff and Lead Counsel Adequately Represented the
                    Class .................................................................................................11

             2.     The Settlement Is the Product of Good-Faith, Arm's-Length
                    Negotiations Among Experienced Counsel After Extensive
                    Discovery ..........................................................................................12

             3.     The Proposed Settlement Falls Well Within the Range of
                    Approval ...........................................................................................14

             4.     The Settlement Treats All Class Members Fairly .............................18

             5.     The Settlement Does Not Excessively Compensate Counsel ............19

       C.    The Court Should Approve the Proposed Form of Notice and Plan for
             Providing Notice to the Class ......................................................................20

     D.   Proposed Schedule of Events ............................................................................22

IV.   CONCLUSION ...............................................................................................................23

# **TABLE OF AUTHORITIES**

CASES                                                                                               Page(s)

*In re Equifax Inc. Sec. Litig.*,
No. 1:17-cv-03463-TWT, slip op. at 1 (N.D. Ga. May 5, 2020), ECF No. 173 .....................23

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ...........................................................................19, 22

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Dec. 18, 2018) ......................................................................8

*In re Henry Schein, Inc. Sec. Litig.*,
No. 1:18-cv-01428-MKB-VMS, slip op. (E.D.N.Y. Sept. 15, 2020), ECF No. 88 ...............23

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
855 F. Supp. 825 (E.D.N.C. 1994) ......................................................................................10

*In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*,
MDL No. 2054, 2012 WL 13124593 (D.S.C. July 12, 2012) ................................................9

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .................................................................................11, 12, 13

*Knurr v. Orbital ATK, Inc.*,
2019 WL 3317976 (E.D. Va. June 7, 2019) .........................................................................19

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
2009 WL 3094955 (E.D. Va. Sept. 28, 2009) .......................................................................9

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mkting, Sales
Prac. & Prod. Liab. Litig.*,
2018 WL 11203065 (E.D. Va. Oct. 9, 2018) ...................................................................11, 12

*In re Lumber Liquidators Holdings, Inc. Sec. Litig.*,
2016 WL 9176562 (E.D. Va. Nov. 17, 2016) .......................................................................19

*In re NeuStar Inc. Sec. Litig.*,
2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ............................................................. *passim*

*In re NII Holdings, Inc. Sec. Litig.*,
2016 WL 11660702 (E.D. Va. Sept. 16, 2016) .....................................................................19

*In re Outer Banks Power Outage Litig.*,
2018 WL 2050141 (E.D.N.C. May 2, 2018) ........................................................................10

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990) ..............................................................................9

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................8

*Solomon v. Am. Web Loan, Inc.*,
   2020 WL 3490606 (E.D. Va. June 26, 2020) ..........................................................11

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
   2012 WL 13008138 (D.S.C. July 31, 2012) ............................................................10

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) .......................................................................12, 14

*In re Vale S.A. Sec. Litig.*,
   No. 1:15-cv-09539-GHW, slip op. (S.D.N.Y. Apr. 21, 2020), ECF No. 196 .........23

*In re Willis Towers Watson PLC Proxy Litig.*,
   2020 WL 5361582 (E.D. Va. Sept. 4, 2020) ..........................................................11

## STATUTES

15 U.S.C. § 78u-4(a)(7) ....................................................................................................20

28 U.S.C. § 1715 ..............................................................................................................21

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Lead Plaintiff The Regents of the University of California ("Lead Plaintiff") respectfully submits this memorandum of law in support of its unopposed motion for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order").[1]

## I.    INTRODUCTION

Lead Plaintiff reached an agreement with Defendants to settle all claims in this securities class action (the "Action") in exchange for a cash payment of $75,000,000 for the benefit of the Class.  In addition, the related fiduciary-duty action pending in the Delaware Court of Chancery will be settled for $15 million, the great majority of which (an estimated 83%) will be distributed to members of the Class in this Action.  As explained further herein, the proposed Settlement (i) is the result of extensive arm's-length negotiations between experienced counsel, which took place after three years of vigorous litigation, including completion of extensive fact and expert discovery, certification of the Class, and substantial trial preparations; and (ii) represents a very favorable result for the Class in light of the significant risks of establishing liability and proving damages, and the possible maximum damages that could be proved at trial.

Lead Plaintiff now moves for preliminary approval of the proposed Settlement.  Entry of the proposed Preliminary Approval Order (attached as Exhibit 2 to the Motion) will only begin the final approval process for the proposed Settlement, which is governed by Rule 23 and relevant case law.  Specifically, the proposed Order authorizes the dissemination of notice of the Settlement to investors who are believed to be members of the Class.  The Order also contemplates scheduling a final approval hearing (the "Settlement Hearing") for the Parties to present arguments for the

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated January 15, 2021 (the "Stipulation"), which is attached hereto as Exhibit 1 to the Motion.

Settlement, and for Class Members to also present any arguments for or against the Settlement should they choose to do so.

At the Settlement Hearing, the Court will have before it more extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate under Fourth Circuit law.  Following the Settlement Hearing, the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate.

At present, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  To facilitate this process, the proposed Preliminary Approval Order: (i) preliminarily approves the Settlement on the terms set forth in the Stipulation; (ii) approves the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) finds that the procedures for distributing the Notice and Claim Form and publishing the Summary Notice comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) sets a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for distributing the proceeds of the Settlement, and Lead Counsel's application for attorneys' fees and expenses, including any request for reimbursement of Lead Plaintiff's costs and expenses under the PSLRA.

For the reasons set forth herein, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order so that notice may be sent to the Class and a final approval hearing can be scheduled.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Towers Watson & Co. ("Towers") was a global professional services firm focused on risk management, human resources, and actuarial and investment consulting.  Willis Group Holdings plc ("Willis") was a global risk advisor, insurance brokerage and reinsurance brokerage company

2

headquartered in London.  Towers and Willis announced their proposed merger (the "Merger") to form Willis Towers Watson plc ("WTW") on June 30, 2015.  Following a vote on December 11, 2015 of Towers stockholders as of October 1, 2015, the record date to be eligible to vote on the Merger, the Merger was approved.  The Merger transaction closed on January 4, 2016.

### A. Lead Plaintiff Embarks on an Extensive Investigation and Files the Complaint

On November 21, 2017, Cambridge Retirement System brought a putative securities class action against Defendants in this Court.  By Order dated February 20, 2018, the Court appointed The Regents of the University of California as Lead Plaintiff for the Action and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the class, and Lead Plaintiff's selection of Susan R. Podolsky as Liaison Counsel.

During February and March 2018, the City of Fort Myers Employees' Pension Fund and Alaska Laborers-Employers Retirement Trust (the "Delaware Lead Plaintiffs") brought putative class actions for breaches of fiduciary duty and aiding and abetting in connection with the Merger in the Delaware Court of Chancery, which were subsequently consolidated (the "Delaware Action").

Meanwhile, Lead Plaintiff in this Action conducted an extensive investigation into the potential claims, which included the review and analysis of: (a) regulatory filings made by Towers and Willis with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by Towers and Willis; (c) analyst reports concerning Towers and Willis; (d) documents filed publicly in connection the stockholder appraisal action, *In re Appraisal of Towers Watson & Co.*, Del. Ch. C.A. No. 12064-CB (the "Appraisal Action"); and (e) other public information regarding Towers and Willis.  Lead Plaintiff also consulted with experts in damages and loss causation.

On March 9, 2018, Lead Plaintiff filed the Amended Complaint in this Action (the "Complaint"), based on this investigation.  The Complaint alleges claims against WTW, Towers, Willis, Haley, and Casserley (the "TW/Willis Defendants") under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder, and "control person" claims against Ubben and ValueAct (together, the "Ubben/ValueAct Defendants"), Haley, and Casserley under Section 20(a) of the Exchange Act.  In the Complaint, Lead Plaintiff alleges that Defendants made material misrepresentations and omissions in proxy solicitations distributed to Towers stockholders concerning the Merger because (i) they failed to disclose an alleged conflict of interest possessed by Haley; (ii) falsely described the Merger negotiations as arm's-length negotiations; and (iii) failed to disclose the role played by ValueAct and Ubben in the Merger negotiations.

**B.      Defendants' Motions to Dismiss and the Subsequent Appeal**

On April 13, 2018 the TW/Willis Defendants and the Ubben/ValueAct Defendants separately filed motions to dismiss the Complaint.  After briefing was completed, the Court held oral argument on the motions on May 18, 2018.

On July 11, 2018, the Court issued a Memorandum Opinion and Order granting Defendants' motions to dismiss the Complaint.  On July 30, 2018, Lead Plaintiff filed a notice of appeal of the dismissal with the United States Court of Appeals for the Fourth Circuit.  After briefing was completed, the Fourth Circuit held oral argument on Lead Plaintiff's appeal on May 8, 2019.  On August 30, 2019, the Fourth Circuit reversed the Court's dismissal of the Action and remanded the Action to the Court.

On November 8, 2019, the TW/Willis Defendants and the Ubben/ValueAct Defendants separately filed renewed motions to dismiss the Complaint.  After full briefing, the Court held oral argument on the renewed motions on December 20, 2019 and, on January 31, 2020, the Court

issued a Memorandum Opinion and Order denying Defendants' renewed motions to dismiss the Complaint.   On February 14, 2020, the TW/Willis Defendants and the Ubben/ValueAct Defendants separately filed their Answers to the Complaint.

On February 4, 2020, the TW/Willis Defendants moved to certify the Court's order denying Defendants' renewed motions to dismiss for appeal and for a continued stay of the proceedings. The Court denied the motion to stay discovery by order dated February 6, 2020, and denied the motion to certify an appeal on February 25, 2020.  The case proceeded to discovery.

### C.      The Parties Complete Fact and Expert Discovery

Between February and August 2020, counsel for Lead Plaintiff and Defendants completed extensive class, fact, and expert discovery, which included taking eighteen (18) depositions, including six (6) expert depositions and multiple depositions of third-parties, producing and reviewing more than one million pages of documents in response to document requests and subpoenas exchanged between the Parties and sent to third-parties, and responding to over forty (40) interrogatories and over two hundred thirty (230) requests for admission.  During the course of discovery, counsel for Lead Plaintiff and Defendants met and conferred to resolve multiple disputes to avoid burdening the Court.

In the course of litigation, the Parties retained and consulted extensively with experts on corporate governance, executive compensation, and damages, among other areas.  Lead Plaintiff's experts submitted a total of six (6) expert reports, including initial reports, rebuttal reports, and reply reports and Defendants' experts submitted a total of four (4) reports.

### D.      Lead Plaintiff Obtains Certification of the Class

On June 12, 2020, Lead Plaintiff filed its motion for class certification and appointment as class representative and appointment of Bernstein Litowitz Berger & Grossmann LLP as class counsel.  After full briefing, the Court held oral argument on the class certification motion on July

29, 2020.   The Parties then further supplemented their briefings at the request of the Court following oral argument on class certification.

On September 4, 2020, the Court entered an order certifying a class of all persons and entities that were Towers shareholders of record as of both October 1, 2015, the record date for Towers shareholders to be eligible to vote on the merger of Towers and Willis, and January 4, 2016, the date the merger transaction between Towers and Willis closed, and who were damaged thereby. The Court appointed Lead Plaintiff as class representative, Lead Counsel as class counsel, and Liaison Counsel as liaison counsel for the Class.   On November 4, 2020, following oral argument and briefing by the Parties, the Court modified the definition of the Class to clarify that the Class includes both record and beneficial holders of Towers common stock.

### E.   The Parties Engage in Substantial Trial Preparations and Defendants Move for Summary Judgment

On August 24, 2020, Lead Plaintiff and the Defendants filed their pre-trial submissions, which included the Parties' deposition transcript designations, witness lists, and exhibit lists, and the Court thereafter set a trial date for March 15, 2021.

On October 16, 2020 the TW/Willis Defendants and the Ubben/ValueAct Defendants separately filed their motions for summary judgment and to exclude the expert testimony of Lead Plaintiff's expert witnesses.   Also on October 16, 2020, Lead Plaintiff filed a motion to exclude the expert testimony of certain of Defendants' expert witnesses.   By the date an agreement in principle to settle was reached, the Parties were engaged in trial preparations.

### F.   The Parties' Settlement Negotiations

On May 21, 2020, the Parties held a mediation before the Honorable Layn Phillips that the parties to the Delaware Action also participated in.   No agreement was reached at that mediation.

Following the unsuccessful mediation in May 2020, counsel for the Parties and the parties to the Delaware Action continued to engage with each other to reach a resolution. Starting in October 2020, the parties engaged in several weeks of back and forth settlement negotiations. On November 19, 2020 the parties reached an agreement in principle to settle the Actions for a total of $90 million, with the Federal Action to be settled for $75 million and the Delaware Action to be settled for $15 million. The settlement of the Federal Action is conditioned on final approval of the settlement of the Delaware Action and vice versa.

### G.     Terms of the Proposed Settlement

The Parties entered into the Stipulation on January 15, 2021 which sets forth the full terms and conditions of the Settlement. The Settlement provides that Defendants will pay or cause to be paid $75 million in cash (the "Settlement Amount") for the benefit of the Class. Pursuant to the Stipulation, the $75 million Settlement Amount shall be paid into an interest-bearing escrow account no later than fifteen (15) business days after the later of : (a) the date on which both (i) the Court has entered the Preliminary Approval Order, and (ii) the Delaware Court has entered an order preliminarily approving the Delaware Settlement and scheduling a hearing on final approval of the Delaware Settlement; and (b) the date on which Defendants' Counsel receives from Lead Counsel the information necessary to effectuate a transfer of funds to the Escrow Account. *See* Stipulation ¶ 8. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among eligible Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).

While only the $75 million Settlement of this Action is before this Court for approval, the Settlement will not become effective unless the Delaware Settlement, which provides for an

additional $15 million for members of the Delaware Class, is also approved by the Delaware Court.  Conversely, the Delaware Settlement will only become effective if the Federal Settlement is approved by this Court.

The Parties have also entered into a confidential Supplemental Agreement, dated January 15, 2021.  *See* Stipulation ¶ 41.  The Supplemental Agreement sets forth the conditions under which Defendants may terminate the Settlement in the event that requests for exclusion from the Class exceed a certain amount (the "Opt-Out Threshold").  This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020). As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an increased individual settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Dec. 18, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera*.  The Stipulation and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

If the Settlement receives the Court's final approval and the Delaware Settlement is approved by the Delaware Court, Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount.  *See* Stipulation ¶ 1(zz).  The scope of the release is reasonable as it is limited to claims related to the Complaint's factual allegations.  *Id.*

## III.    ARGUMENT

The Settlement warrants preliminary approval because of the significant benefit achieved for the Class, the significant risks and substantial costs that would otherwise be associated with continued prosecution of the Action, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel after extensive discovery.

### A.    Standards Governing Approval of Class Action Settlements

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. In determining whether to approve the Settlement, the Court should be guided by the principle that "there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). "'The voluntary resolution of litigation through settlement is strongly favored by the courts' and is 'particularly appropriate' in class actions." *In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*, MDL No. 2054, 2012 WL 13124593, at *4 (D.S.C. July 12, 2012) (*quoting S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990)).

District court review of a proposed class action settlement is a two-step process. First, in the stage currently before the Court on this Motion, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize sending notice of a proposed settlement to the class upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B)(i). This standard for preliminary approval of class action settlements was newly established by amendments to Rule 23(e) that became effective

on December 1, 2018.  Prior to those amendments, courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently.  A common formulation was that the court should grant preliminary approval to a proposed settlement, if it is "within the range of possible approval" or, in other words, if "there is 'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness."  *In re NeuStar Inc. Sec. Litig.*, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015); *see also In re Outer Banks Power Outage Litig.,* 2018 WL 2050141, at *2 (E.D.N.C. May 2, 2018) ("the court preliminarily reviews the settlement to determine whether there is 'probable cause to notify the class of the proposed settlement'") (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, 2012 WL 13008138, at *5 (D.S.C. July 31, 2012) ("Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval.").

In considering ***final*** approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

At final approval, the Court will also consider the Fourth Circuit's traditional factors set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). [2]  *See* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

This $75 million Settlement satisfies all of these standards for preliminary approval.

**B.      The Court "Will Likely Be Able to" Approve
the Proposed Settlement Under Rule 23(e)(2)**

**1.      Lead Plaintiff and Lead Counsel Adequately Represented the Class**

In determining whether to approve a class action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation." *Solomon v. Am. Web Loan, Inc.*, 2020 WL 3490606, at *2 (E.D. Va. June 26, 2020) (quoting *NeuStar*, 2015 WL 5674798, at *4).

In granting class certification, the Court found that Lead Plaintiff was adequate to serve as Class Representative, and Lead Counsel was fit to serve as Class Counsel. *See In re Willis Towers*

---

[2] Under *Jiffy Lube*, to assess whether the settlement is adequate, the court must consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." 927 F.3d at 159; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mkting, Sales Prac. & Prod. Liab. Litig.*, 2018 WL 1203065, at *3 (E.D. Va. Oct. 9, 2018).  These factors largely overlap with the factors set forth in Rule 23(e)(2) and the fifth factor, which concerns the reaction of the class, cannot yet be ascertained because notice of the Settlement has not yet been sent to class members.

*Watson PLC Proxy Litig.,* 2020 WL 5361582, at \*14-\*16 (E.D. Va. Sept. 4, 2020).  Lead Plaintiff and Lead Counsel have adequately represented the Class in both their vigorous prosecution of the Action during the past three years and in the negotiation and achievement of the Settlement.  Lead Plaintiff played an active role in supervising and participating in the litigation and Lead Counsel vigorously prosecuted the Class's claims, including by conducting a thorough investigation, overcoming Defendants' motions to dismiss, obtaining certification of the Class, and engaging in extensive discovery.  Accordingly, as the Court previously found in certifying the Class and in appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel, Lead Plaintiff and Lead Counsel have adequately represented the Class here.

### 2.    The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel After Extensive Discovery

In weighing a class action settlement at final approval, the Court must consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Similarly, under *Jiffy Lube*, the Court must determine whether the settlement was reached through good-faith bargaining at arm's length by assessing four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation." *NeuStar*, 2015 WL 5674798, at \*10 (quoting *Jiffy Lube,* 927 F.2d at 159); *see Lumber Liquidators*, 2018 WL 11203065, at \*3 (same).  All of these factors strong demonstrate that the Settlement here was reached through arm's-length negotiations after vigorous litigation and without collusion.

In the first *Jiffy Lube* fairness factor, the Court considers "the posture of the case at the time the settlement was proposed" in order to determine whether the case has progressed far enough to dispel any wariness of "possible collusion among the settling parties."  *NeuStar*, 2015 WL 5674798, at \*10 (quoting *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va.

2009)).  Here, the Settlement was not reached until after three years of vigorously litigation, which included overcoming an initial dismissal of the Action through an appeal to the Fourth Circuit, the completion of extensive fact and expert discovery, and Lead Plaintiff's successful certification of the Class followed by the resolution of a dispute regarding the class definition.  The Settlement was not reached until after Defendants had filed their motions for summary judgment, and all Parties had filed pre-trial submissions and *Daubert*.  All of these stages of the litigation were highly contested by zealous counsel for both sides and there is no hint of any collusion.

The next *Jiffy Lube* factor is the extent of discovery.  "This factor permits the Court to ensure that all parties 'appreciate the full landscape of their case when agreeing to enter into the Settlement.'"  *NeuStar,* 2015 WL 5674798, at *10.  The Parties had completed fact and expert discovery before the Settlement was reached here.  During the course of the discovery in this Action, Lead Plaintiff fought for and received more than one million pages of documents in response to document requests to Defendants and subpoenas to non-parties, and the Parties took depositions of 18 witnesses, including six experts and multiple third-parties.  The Parties also exchanged over 40 interrogatories and over 230 requests for admissions, and counsel for Lead Plaintiff and Defendants met and conferred over multiple disputes during the course of the discovery.  Thus, by the time the agreement to settle was reached, the Parties had an extensive and complete factual record and Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weakness of the claims.

The third *Jiffy Lube* factor (the circumstances surrounding the negotiations) and the fourth factor (the experience of counsel in the area of securities class action litigation) also strongly support approval of the Settlement.  In May 2020, the Parties participated in a settlement mediation before the Honorable Layn Phillips, an experienced mediator of securities class actions, but the

Parties could not reach any agreement at that time.   Thereafter, in October 2020, following certification of the Class, the Parties engaged in several weeks of negotiations and reached the agreement in principle to settle on November 19, 2020.   Lead Plaintiff was represented during these negotiations by experienced counsel with a proven track record of success in securities class action litigation, including within the Fourth Circuit.[3]   In these circumstances, Courts give considerable weight to the opinion of experienced and informed counsel.   *See Mills*, 265 F.R.D. at 256 ("[W]hen Class Counsel [including Bernstein Litowitz] are nationally recognized members of the securities litigation bar, it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.").   Moreover, the Court-appointed Lead Plaintiff, The Regents of the University of California, is a sophisticated institutional investor that cares for billions of dollars of investments, has ample experience in securities class actions, and actively participated in and approved of the proposed Settlement.

### 3.    The Proposed Settlement Falls Well Within the Range of Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement falls "within the range of possible approval."   *NeuStar*, 2015 WL 5674798, at *10.   Because the proposed $75 million Settlement represents an excellent recovery for the Class in light of the significant risks of the litigation and the potential outcomes at trial, Lead Plaintiff believes that the Settlement falls well within the range of possible approval.

---

[3] *See, e.g., In re Genworth Financial, Inc. Sec. Litig.,* No. 3:14-cv-00682-JAG (E.D. Va. 2016) (Bernstein Litowitz was co-lead counsel in $219 million settlement); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.,* No. 4:13–cv–00157–AWA (E.D. Va. 2016) (Bernstein Litowitz was co-lead counsel in $41.7 million settlement); *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246 (E.D. Va. 2009) (Bernstein Litowitz was co-lead counsel in $202.75 million settlement).

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are strong, they recognize the substantial risks they would face in overcoming Defendants' motions for summary judgment, in establishing liability and damages at trial, and in prevailing on any appeals after trial.

First, Lead Plaintiff faced substantial risks in establishing that Haley had a true conflict of interest in connection with the Merger which required disclosure in the Proxy Materials.  Lead Plaintiff alleged that Haley had a conflict of interest as a result of a September 10, 2015 meeting at which ValueAct and Ubben presented Haley with a written compensation proposal that showed Haley could make up to five times more at the post-Merger entity, WTW.  Defendants would contend that they did not need to disclose this compensation proposal in the Proxy Materials because Haley and Ubben never reached an agreement on Haley's compensation during the meeting, and because Ubben did not have the authority to negotiate on behalf of the future board of WTW.  This argument was supported by Haley and Ubben's deposition testimony concerning the meeting and other discovery confirming that Ubben and ValueAct did not have authority to negotiate for WTW.  In addition, Defendants could point to the fact that Haley's ultimate compensation at WTW was far less than the compensation proposal discussed at the meeting.

Defendants would have argued that Haley was not, in fact, conflicted, but, on the contrary, sought to maximize the consideration paid to Towers shareholders as part of the Merger renegotiations.  For example, Defendants would argue that the fact that Haley successfully obtained a dividend increase during the course of Merger negotiations showed that he was not improperly incentivized by any conflict of interest but was instead working to make the deal favorable for Towers shareholders.

In addition, Lead Plaintiff would have faced additional substantial risks in showing that the September 10, 2015 meeting was a material fact, the omission of which rendered the Proxy Materials misleading.  Defendants argue that Towers shareholders would not have viewed the September 10, 2015 meeting as important in deciding how to vote on the Merger by asserting that the proposal shown to Haley during the meeting aligned his interests with the interests of shareholders, highlighting the fact that WTW's stock price did not move when Haley's actual WTW compensation plan was publicly announced, and arguing that shareholders ultimately approved his WTW compensation plan.

In addition to risks of establishing a materially misleading omission, Lead Plaintiff would also have faced significant additional challenges in establishing "loss causation" and in proving damages.  First, Defendants would argue that the Merger announcement on June 30, 2015 signaled to the market that Towers stock was previously overvalued, and thus investors were not damaged by Defendants' actions.

Further, Defendants had a number of potentially serious challenges to Lead Plaintiff's damages theory.  Lead Plaintiff argued that Class members' damages were properly calculated based on the difference between the value of their Towers stock and the value of the merger consideration they actual received.  However, Defendants contended that Lead Plaintiff's expert's damages analysis relied on a series of assumptions that Lead Plaintiff would not be able to prove. For example, Defendants contended that Lead Plaintiff would not be able to prove that disclosure of Haley's alleged conflict of interest would have caused enough Towers shareholders to change their votes to reject the Merger; or that if the Merger had been rejected, Towers shares would have returned to their unaffected pre-Merger trading price; or Towers and Willis would have renegotiated the terms of the Merger to provide additional compensation for Towers employees.

The seriousness of these risks was enhanced by the fact that Court's discussion of related issues in its class certification decision indicated that the Court might likely be receptive to Defendants' arguments at summary judgment.

Even if Lead Plaintiff defeated Defendants' motions for summary judgment and prevailed on all aspects of liability at trial, the absolute maximum damages that could be established for the Class would be approximately $377 million.  However, if plaintiffs were limited to measuring damages as the difference in value Towers shareholders received upon the close of the Merger and the value of Towers stock as of that time—as the Court had indicated it would view damages in this case—the maximum damages would be approximately $172.5 million.  Thus, the proposed $75 million Settlement represents approximately 20% of the absolute maximum possible damages and a far higher percentage (43%) of the maximum damages that could likely be proven at trial in light of the Court's views.[4]  This is an excellent result for the Class given the significant risks the Court might grant summary judgment or reject Lead Plaintiff's damages expert's model of damages entirely or that Lead Plaintiff might ultimately be unsuccessful in proving liability and damages at trial.

Moreover, with respect to all of these issues, Lead Plaintiff would have to prevail at several stages—on Defendants' pending motion for summary judgment, at trial, and if they prevailed on those, in the appeals that would likely follow—which could take years to resolve. The Settlement

---

[4] In addition, **all** members of the Class will also be eligible to receive payment from the parallel $15 million Delaware Settlement.  The proceeds of the Delaware Settlement will be distributed to all shareholders of Towers common stock on January 4, 2016, when the Merger closed.  Lead Plaintiff's expert estimates, based on his modeling of the trading in Towers common stock, that 83% the Towers shares held on January 4, 2016 were held by the same person or entity on October 1, 2015 (and thus are eligible to participate in the Settlement of this Action), and just 17% were held by persons or entities who purchased after October 1, 2015.

avoids these risks and will provide a prompt, substantial, and certain benefit to the Class rather than the mere possibility of a recovery after additional years of litigation and appeals.

### 4.     The Settlement Treats All Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Class.   Rather, all Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in full in the Notice. The Plan provides for a simple *pro rata* distribution of the Net Settlement Fund based on the number of "Federal Eligible Shares" held by each Claimant.  *See* Plan ¶¶ 10-14 (Notice at pp. 29-30).  Consistent with the Court's rulings on the Class Certification Motion, the number of Federal Eligible Shares is the number of shares of Towers common stock that claimant held as of the close of trading on October 1, 2015 that were still held as of the close of trading on January 4, 2016.  *See* Plan ¶ 12.[5]

For purposes of efficiency, the same Claims Administrator will administer both this Settlement and the proposed Delaware Settlement, given the largely overlapping classes.  Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants.  If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost effective.  At such time, any remaining balance will be contributed to non-sectarian, not-for-profit,

---

[5] If a Class Member had any sales of Towers common stock during from October 2, 2015 through the close of trading on January 4, 2016, the number of Federal Eligible Shares shall be determined on a First In, First Out basis.  *See* Plan ¶ 13.

501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Class Members and merits approval at the Settlement Hearing.

     **5.**     **The Settlement Does Not Excessively Compensate Counsel**

The proposed Settlement does not grant excessive compensation to Lead Counsel. The Settlement does not contemplate *any* specific award to Lead Counsel, who will be compensated out of the Settlement Fund pursuant to the approval of the Court.

In connection with Lead Counsel's fee and expense application, Lead Counsel will seek fees of no more than 16% of the Settlement Fund, an amount that is well within, if not below, the percentages that courts in the Fourth Circuit approve in securities class actions with comparable recoveries. Courts in this District routinely approve substantially higher percentage fee awards in securities and other comparable class actions. *See e.g., Knurr v. Orbital ATK, Inc.,* 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (awarding 28% of $108 million settlement); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, 2016 WL 9176562, at *1 (E.D. Va. Nov. 17, 2016) (awarding 23.5% of combined stock and cash settlement valued at $41.7 million); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding 28% of $219 million settlement); *In re NII Holdings, Inc. Sec. Litig.*, 2016 WL 11660702, at *1 (E.D. Va. Sept. 16, 2016) (awarding 25% of $41.5 million settlement). Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $2,000,000.

Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application, which will be decided *de novo* at the Settlement Hearing.

C.      **The Court Should Approve the Proposed Form of Notice
and Plan for Providing Notice to the Class**

The Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Stipulation, Exs. A-1 and A-3.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Class Members of (among many other disclosures) the nature of the Action; the definition of the Class; the claims and issues involved; that the Court will exclude from the Class any Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so); and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).  The Notice states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and litigation expenses that Lead Counsel will seek; provides the name, mailing address, email address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*.

Because the membership of the Class in this Action and the class in the Delaware Action are largely overlapping, the Parties have proposed a joint Notice and Summary Notice, which addresses both this Settlement and the Delaware Settlement.  Similarly, a joint Claim Form will be used to process claims in both the Actions.  Claimants will only need to submit one Claim Form to be eligible for payment from both Settlements.

The proposed notice program, which is set forth in the proposed Preliminary Approval Order submitted herewith, readily meets the standards under the Federal Rules of Civil Procedure and due process.  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement.  Fed. R. Civ. P. 23(e)(1).

Lead Plaintiff proposes that A.B. Data, Ltd. ("A.B. Data") administer the notice and claims process.  A.B. Data is an experienced independent settlement and claims administrator that Lead Counsel selected as the proposed administrator after a competitive bidding process.  If the Court preliminarily approves the Settlement, WTW will provide contact information of potential Class Members to A.B. Data for the purpose of identifying and giving notice to the Class and A.B. Data will disseminate the Notice and Claim Form (the "Notice Packet") to all identified potential Class Members.  A.B. Data will also use reasonable efforts to give notice to brokerage firms and other nominees who held Towers common stock on October 1, 2015 or January 4, 2016 on behalf of other beneficial owners.  These nominee purchasers will either forward the Notice Packet or provide the names and mailing addresses, and, if available, email addresses of the beneficial owners to A.B. Data, which will then mail or email the Notice Packet to such identified beneficial owners.  A.B. Data will also cause the Summary Notice to be published once in the *Wall Street Journal* and be transmitted over the *PR Newswire*, and will post the Notice and other materials on a website to be developed for the Settlements.[6]

---

[6] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* ("CAFA").  *See* Stipulation ¶ 24.

Courts routinely find that comparable notice programs, combining individual notice by first class mail to all class members who can reasonably be identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *See, e.g., Genworth*, 2016 WL 7177515, at *3; *NeuStar*, 2015 WL 5674798, at *12.

### D.    Proposed Schedule of Events

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[7]  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| <u>Event</u> | <u>Time for Compliance</u> |
|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Class Members | 20 calendar days after the Entry Date, which shall be the first date on which both (i) the Preliminary Approval Order and (ii) a comparable order from the Delaware Court scheduling a final hearing on approval of the Delaware Settlement, have been entered. |
| Deadline for publishing the Summary Notice | 35 calendar days after the Entry Date |
| Deadline for filing final approval and fee motions | 65 calendar days after the Entry Date |
| Deadline for receipt of requests for exclusion from the Class or objections to the Settlement, proposed Plan of Allocation or motion for attorneys' fees and expenses | 80 calendar days after the Entry Date |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Settlement Hearing | At least 108 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

---

[7]  The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Class Members.

| Deadline for submitting Claim Forms | 120 calendar days after the Entry Date |

The proposed schedule is designed to permit providing combined notice of the Federal Settlement and the Delaware Settlement to class members.  If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a **date at least 108 calendar days** after entry of the Preliminary Approval Order (to allow time for the Delaware Court to enter its order as well), or at the Court's earliest convenience thereafter.  Lead Plaintiff requests that the hearing be scheduled, if possible, during the week of **Monday, May 17, 2021**, which is consistent with the proposed schedule if the Court enters the Preliminary Approval Order within the next 14 days, or by January 29, 2021.  In light of the COVID-19 pandemic, the proposed Preliminary Approval Order provides that the Settlement Hearing may be held by telephone or videoconference in the discretion of the Court.[8]

## IV.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will:  (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Class Members; (iii) approve A.B. Data as the Claims Administrator; and (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

---

[8] Numerous courts have approved of conducting final settlement hearings on approval of class action settlements by telephone or videoconference and have permitted any class members who wish to be heard to participate by these remote means.  *See, e.g.*, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428-MKB-VMS, slip op. at 1 (E.D.N.Y. Sept. 15, 2020), ECF No. 88; *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT, slip op. at 1 (N.D. Ga. Apr. 28, 2020), ECF No. 172 and slip op. at 1 (N.D. Ga. May 5, 2020), ECF No. 173; *In re Vale S.A. Sec. Litig.*, No. 1:15-cv-09539-GHW, slip op. at 1 (S.D.N.Y. Apr. 21, 2020), ECF No. 196.

Dated: January 15, 2021                   Respectfully submitted

                                          */s/ Susan R. Podolsky*
                                          **LAW OFFICES OF SUSAN R. PODOLSKY**

                                          Susan R. Podolsky (Va. Bar No. 27891)
                                          1800 Diagonal Road, Suite 600
                                          Alexandria, Virginia 22314
                                          Telephone: (571) 366-1702
                                          Facsimile: (703) 647-6009
                                          spodolsky@podolskylaw.com

                                          *Local Counsel for Lead Plaintiff and*
                                          *Court-Appointed Class Representative*
                                          *The Regents of the University of California*

                                          **BERNSTEIN LITOWITZ BERGER**
                                          **  & GROSSMANN LLP**

                                          Salvatore J. Graziano (*pro hac vice*)
                                          John Rizio-Hamilton (*pro hac vice*)
                                          Rebecca E. Boon (*pro hac vice*)
                                          Jai K. Chandrasekhar (*pro hac vice*)
                                          Jesse L. Jensen (*pro hac vice*)
                                          Nicholas Gersh (*pro hac vice*)
                                          1251 Avenue of the Americas
                                          New York, New York 10020
                                          Telephone: (212) 554-1400
                                          Facsimile: (212) 554-1444
                                          salvatore@blbglaw.com
                                          johnr@blbglaw.com
                                          rebecca.boon@blbglaw.com
                                          jai@blbglaw.com
                                          jesse.jensen@blbglaw.com
                                          nicholas.gersh@blbglaw.com

                                          *Counsel for Lead Plaintiff and Court-Appointed*
                                          *Class Representative The Regents of the*
                                          *University of California, and Class Counsel for*
                                          *the Class*

#1432252

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Susan R. Podolsky
Susan R. Podolsky (Va. Bar No. 27891)